## MARTIN PAULSON, Respondent, v. J. A. REEDS, Appellant.

### (167 N. W. 371.)

**Broker — commissions earned — on sale of lands listed with him — action to recover — sale on terms of listing contract — inability to make — sale made on different terms — conditionally accepted by landowner — agent — adoption of acts — evidence — jury — instructions.**

1. In an action by a broker to recover a commission under an express contract upon a sale of real property, where it appears that the broker was unable to negotiate a sale according to the terms of the listing agreement previously made; and where the defendant entered into a less favorable contract negotiated by the broker with the understanding, as claimed by the defendant, that the broker was to make up the difference out of his commission,—*held*, reversible error for the court to instruct the jury that, if it should find that there was an agreement between plaintiff and defendant as to commission, as alleged by the plaintiff, and that if the land was sold on other terms than those originally agreed upon, the defendant would be bound to pay the full amount of the commission if he adopted the changes made while still permitting the plaintiff to continue to act as his agent.

**Real estate broker — selling land for principal — on different terms — from those in listing contract — assent of owner — on condition that commissions shall be different — new agreement controls.**

2. Where a real estate broker sells land for his principal upon terms different from those contained in the original listing agreement; and where the owner assents to the sale with the understanding that the commission shall be different from that originally agreed upon,—no commission in excess of that provided by the new agreement can be recovered.

Opinion filed March 1, 1918.    Rehearing denied April 9, 1918.

Appeal from District Court of Richland County, *A. T. Cole,* J. Reversed.

*W. S. Lauder,* for appellant.

It is the law that where a party sues on an express contract he cannot recover on an implied contract, nor on a *quantum meruit.* 9 Cyc. 749 et seq., Wernli v. Collins (Iowa) 54 N. W. 364; Morrow v. Board of Education (S. D.) 64 N. W. 1126; Ball v. Dolan (S. D.) 114 N. W. 998; 2 Enc. Pl. & Pr. 990.

The gist of appellant's entire contention is that if respondent furnished to the appellant a buyer who was ready, able, and willing to buy the land on the terms of the listing contract, and this appellant so sold his land, or arbitrarily refused to accept such buyer and sell, then respondent could recover. If no such buyer was furnished by respondent, and sale was not made under the listing contract, then respondent cannot recover upon some other theory. 21 L.R.A.(N.S.) 935; 29 L.R.A.(N.S.) 533; 34 L.R.A.(N.S.) 1050; 139 Am. St. Rep. 225; 2 Hill's Dig. (Dak.) pp. 174–177; Ward v. McQueen, 13 N. D. 153, 100 N. W. 253.

Under the listing contract, plaintiff was to procure a purchaser ready, willing, and able to buy the land on certain definite, stated terms, and that he did not furnish such a purchaser; that the purchaser he did furnish refused to buy on the terms specified in the listing contract. Anderson v. Jorgenson, 16 N. D. 174; Ames v. Le Mont, 107 Wis. 231; McArthur v. Slauson, 53 Wis. 41; Ball v. Dolan, 18 S. D. 558; Milligan v. Owens, 123 Iowa, 285; Wenks v. Hazzard (Iowa) 123 N. W. 1099.

He, the broker, was not entitled to commissions for furnishing a purchaser at a less price or upon less advantageous terms to the landowner than those stated in the listing contract. Cook v. Forst, 116 Ala. 396; Steinfield v. Strom, 31 Misc. 167; Reiger v. Bigger, 29 Mo. App. 428; Anderson v. Jorgenson, 16 N. D. 174; Williams v. McGraw, 52 Mich. 480; Crombie v. Waldo, 137 N. Y. 129; Rake v. Townsend (Iowa) 102 N. W. 499; Monson v. Kill, 144 Ill. 248; Stautenburgh v. Evans (Iowa) 120 N. W. 59; Pepsen v. Morohn (S. D.) 119 N. W. 988; Morill v. Davis, 27 Neb. 775; O'Brien v. Gilland, 4 Tex. Civ. App. 40; Mullenhoff v. Gensler, 15 N. Y. Supp. 643; Harwood v. Triplett, 34 Mo. App. 273; Smith v. Allen, 101 Iowa, 608; Oliver v. Sattler, 233 Ill. 536; Gough v. Coffin (Tex.) 120 S. W. 210; Stearns v. Jennings, 128 Wis. 379; Everman v. Herndon, 71 Miss. 823; Am. & Eng. Enc.

Law, 434; 9 C. J. 597 ct seq. and cases cited under note 6, p. 588; Beers v. Schallern (N. D.) 161 N. W. 557.

The question of imagined justice or fairness and that in any event something is due plaintiff for his part in the transaction, is not involved in this lawsuit. Plaintiff predicates his suit and his right to recover upon an express contract, and the only question presented is, Did plaintiff perform according to such specific contract? Ferguson v. Willard, 116 C. C. A. 406, 196 Fed. 370; Johnson v. Virginia-Carolina Lumber Co. 89 C. C. A. 632, 163 Fed. 249; Cook v. Forst, 116 Ala. 395; Van v. Pelot, 55 Fla. 357; Jones v. Adler, 34 Md. 440; Williams v. McGraw, 52 Mich. 480; Antisdel v. Canfield, 119 Mich. 229; Brown v. Adams (R. I.) 69 Atl. 601; Ball v. Dolan, 21 S. D. 619; Largent v. Storey (Tex.) 61 S. W. 977; Terry v. Bartlett, 153 Wis. 208, 140 N. W. 1133; Bridgeman v. Hepburn, 13 B. C. 389; Hughes v. Dodd, 164 Mo. App. 454; Trickey v. Crowe, 8 Ariz. 176; McArthur v. Slauson, 53 Wis. 41; Ryan v. Page, 134 Iowa, 60.

*Wolfe & Schneller,* for respondent.

This action is not based upon the listing contract made at the time the lands were first listed with plaintiff for sale. The facts show that later on plaintiff procured a purchaser; that then defendant agreed with plaintiff that plaintiff shall have and retain as his commissions all over and above a certain amount; that the lands were sold to this purchaser so procured and furnished by plaintiff for an amount $1,200 in excess of the net sum stated and agreed to be accepted by defendant and actually accepted by him. The actual agreement under which all parties acted was oral and therefore could be modified orally, or by acts or conduct. Sunshine Cloak & Suit Co. v. Roquette Bros. 30 N. D. 143.

BIRDZELL, J. This is the third appeal in an action wherein the plaintiff sues to recover commissions upon the sale of 800 acres of land. Upon the first appeal (Paulson v. Reeds, 24 N. D. 211, 139 N. W. 1135) the respondent confessed error which resulted in the reversal of a judgment for $700 in his favor. Upon the second appeal the judgment was for $1,200, which judgment was reversed for error in instructions to the jury (Paulson v. Reeds, 33 N. D. 141, 156 N. W. 1031). The facts necessary to an understanding of the case have been previously stated, and it is not necessary to restate them *in extenso*. Sufficient

facts will be stated, however, in connection with the discussion of the instructions given by the trial court, to demonstrate wherein the instructions are erroneous.

However strong the disinclination may be to reverse a judgment based upon the third favorable verdict of a jury, the duty to do so is nevertheless incumbent upon the court when the error is clear and its prejudicial effect obvious. The error in this case is of that sort, as will readily appear from an examination of the charge to the jury. The charge of the court was in part as follows:

"If the plaintiff and the defendant in this case entered into a contract for the sale of the defendant's land, and you so find from the evidence, if you also find that defendant signed exhibit 'A', wherein it is stated that he will take $16 an acre net for the lands in question, I charge you that said exhibit is not of itself and standing alone a contract between the plaintiff and the defendant, fixing or determining the right of the plaintiff to a certain and definite commission or compensation for negotiating a sale, but if you find in fact it was signed by the defendant, and he knew what he was signing, it constitutes a link in the chain of evidence whereby plaintiff seeks to establish the contract alleged between himself and the defendant, not only for the sale of the lands in question, but a link in the chain of evidence seeking to establish and prove the compensation or commission which plaintiff was to receive for his services as a land broker and an agent for the defendant.

"In order for the plaintiff to recover in this action the minds of the parties must have met upon the proposition of the plaintiff acting as agent or broker for the defendant, and their minds must also have met upon the matter of paying a commission to plaintiff, and as to that matter their minds must have met upon the proposition of the plaintiff receiving as a commission all above the sum of $16 per acre received through the sale of the lands in question, as the plaintiff rests his case upon an express contract founded upon such claimed agreement. . . .

"Among other matters to be weighed and considered by you in making up your verdict, is the question of whether or not there was a variation from the terms of sale as claimed to have been stipulated by the defendant to the plaintiff. in permitting the plaintiff to try to effect a sale of the lands in question, and if there was a variance in the sale that was made from the terms originally stipulated and agreed upon between

plaintiff and defendant, you must further find before you can find a verdict for the plaintiff, that the defendant understood and had his attention called to such variance, and that he accepted and adopted the same while still permitting the plaintiff to act as his agent and broker. . . .

"If you find from the evidence that the contract claimed by the plaintiff was not entered into and agreed upon by and between plaintiff and defendant, in other words, if you find that at no time did the minds of the parties to this action meet upon the proposition alleged by plaintiff, to wit, that the defendant was to have a net price of $16 per acre, and the plaintiff to have all received above that as his commission, and it is agreed between the parties here that the land sold for $17.50 an acre, then you would find a verdict for the defendant. If you should find, however, that the agreement between the plaintiff and the defendant was as alleged by plaintiff, that the defendant should receive a net price of $16 an acre and the plaintiff take as his commission all above that, and that as a part of that agreement or an agreement with plaintiff to act as agent or broker named specific terms of sale, and you further find that those terms and agreements were departed from in any material respect, and the land was sold on other terms than the terms agreed upon between plaintiff and defendant, and you further find that the defendant did not agree with the plaintiff to the change of terms and did not consent to a sale by plaintiff of the land under the claimed change in terms and agreement, but the sale was consummated without the agency of plaintiff continuing, and without the defendant agreeing to the change in terms and conditions of sale alleged to have been made, then you must find for the defendant. . . .

"The agent or broker must furnish a buyer ready, able, and willing to buy on the terms and conditions upon which the lands have been given by the seller to the agent for sale. However, if a purchaser, ready, able, and willing to buy is produced, and he refuses to buy on all the terms and conditions which the seller has named to his agent or broker, and the seller through his agent—in this case the defendant through the plaintiff—agrees to other terms and conditions as to the sale to the purchaser, and demands no new terms as to the compensation or commission which the agent or broker is to have, then if you find such to be the fact in this case, I charge you if the defendant received, or was to

receive, the $16 per acre net claimed by plaintiff to have been the agreed price between him and defendant, the seller, and the lands were sold for a price netting the defendant $16 per acre, and you find that the contract was as alleged by the plaintiff for his compensation or commission to be all above the price of $16 per acre, and the defendant consummated the deal through and by the assistance of the plaintiff, his agent, then plaintiff has established his claim herein, and your verdict must be in his favor for the amount of commission claimed. . . .

"As heretofore charged, you must find, first, whether or not there was an express contract, as claimed by the plaintiff herein, to wit, a contract for the sale of the land of the defendant at a net price to him of $16 an acre, and if you also find that the plaintiff was to have as his commission and compensation all of the price received over and above said $16 per acre net, and you further find that although the terms as originally stated by defendant to plaintiff upon which he would sell the land involved in this controversy were varied and changed to some extent in the actual transaction as completed, then if you find that the defendant understood and was aware of the changes or variations and accepted and adopted them while still permitting the plaintiff to continue to act as his agent or broker in the transaction made at the sale of said lands, then you will find a verdict for the plaintiff, as claimed by him. . . .

"While the defendant claims a contract different from that set up by the plaintiff, and also claims a variation in the terms of sale, and has offered some testimony as to not accepting the variations from the terms of listing, I charge you that in this case, the plaintiff rests his case on the claimed contract between plaintiff and defendant for a compensation or commission of all received above the sum of $16 an acre net to the defendant, the plaintiff must recover, if he recovers at all, the sum of $1,200, with legal interest thereon from the 15th day of November, 1910, as it is agreed that the lands were sold for $17.50 an acre.

"Before the plaintiff can recover, he must prove, by a fair preponderance of the evidence, the following essential facts: . . .

"3. That Paulson actually sold the land, on terms of sale then assented and agreed to by Mr. Reeds, with knowledge of the facts, whether they were the original terms or not. . . .

"If you find these four essential facts (of which the foregoing is one) in favor of the plaintiff's contention for them, then the plaintiff should have a verdict for $1,200, with legal interest thereon since November 15, 1910. . . .

"The terms of sale are stated and noted in exhibit 'B,' and this exhibit you will be at liberty to take with you to the jury room. It is admitted that these are not in all respects the same terms as the terms stated to the plaintiff when it is claimed the lands were listed with him by the defendant for sale. However, if you find that the defendant accepted and adopted them, and the sale was made on the terms as set out in exhibit 'B,' and the plaintiff Paulson continued as the agent of the defendant, then you must find a verdict for the plaintiff, as claimed by him."

Upon the latter of the two former appeals of this case, the judgment of the trial court was reversed because of instructions given to the jury, stating in substance that the commission which the plaintiff was to receive was governed by the terms of exhibit "A," this exhibit being a memorandum as follows:

Wyndmere, N. D., June 28, 1910.

Martin Paulson:—

You are hereby authorized to sell my land, W.½ S. E.¼, 21, and E.½ of 20, 132–52, at $16 per acre net to me.

J. A. Reeds.

The jury, upon the trial reviewed upon that appeal, was told in substance that if Reeds signed exhibits "A" and "B" (the latter being the sale contract), he would owe the plaintiff $1,200 commission. It was held that exhibit "A" could not be considered as controlling on the question of commissions, and that this question should have been submitted to the jury on all of the oral testimony. Upon this trial the jury was correctly instructed as to the effect of exhibit "A," but a reading of the quoted portions of the charge discloses that the jury was also instructed that, if the defendant signed exhibit "B" while plaintiff was acting as his agent, knowing at the time he signed it that it did not contain the terms of the contract the plaintiff had been authorized to negotiate for him, he would be bound to pay to the plaintiff his full

commission of $1,200. It will be readily seen that this instruction makes the signing of exhibit "B" with knowledge of its contents, and, while the plaintiff was still acting as agent for the defendant, conclusive as to the commission agreed upon. It authorized the jury to ignore the testimony given by the defendant to the effect that the plaintiff was to stand the difference between the value of the contract evidenced by exhibit "B" and the value of such a contract as the plaintiff was originally authorized to negotiate for the defendant. Upon analysis it will be seen that there is no substantial difference between the making of exhibit "A" an exclusive and absolute criterion of the amount of plaintiff's commission and making it the criterion conditioned only on the circumstance of Reeds' signing of exhibit "B" with knowledge that Paulson was purporting to act as his agent. The instruction in this case is, in reality, open to the same vice as the one that was held erroneous upon the former appeal.

The confusion which seems to have characterized all of the trials of this action results from a failure to apply elementary principles to a rather complicated set of facts. The listing agreement and the brokerage or commission contract are properly regarded as separate and distinct, but, though separate and distinct, they are yet parts of the same transaction, and the latter is so far dependent on the former that the right to the agreed commission can only arise when a sale has been negotiated in accordance with the authority contained in the listing agreement. In short, the execution of the listing contract to the point of supplying a purchaser ready, willing, and able to buy upon the terms thereof, is the condition precedent to the right to recover the agreed compensation. It is not now, and has not been, as we understand it, the contention of the plaintiff and respondent that a sale has ever been negotiated in accordance with the original listing agreement, and similarly, it is not now and never has been the contention of the defendant and appellant that he ever agreed to pay to the plaintiff the full difference between $16 per acre for the land sold and the price obtained under the terms of exhibit "B." In view of the respondent's position, it is essential for him to show, before he can recover any sum as an agreed commission, that he sold the defendant's land in accordance with the terms of a listing agreement in consideration of the fulfilment of which defendant agreed to pay him a stated commission. The plain-

tiff admits that, at the time exhibit "A" was signed, the defendant had no knowledge of the terms of the sale which had previously been negotiated by plaintiff, and he further admits that the sale was not consummated according to the terms of the previous listing agreement, in that the cash payment was but one fourth of that stipulated in the listing agreement, and the interest on the deferred payments was more than $700 less than that originally contemplated. The respondent also admits that at the time exhibit "B" (the sale contract) was signed by the defendant, he did not even contend that it conformed to the previous listing agreement, and that the defendant became acquainted with its terms for the first time at the meeting at which it was signed. There is testimony in the case to the effect that at this meeting the defendant signed exhibit "B" with the understanding, had then and there between him and the plaintiff, that the plaintiff was to make up the difference between the value of the sale contract as made and the contract as it would have been had it been made in accordance with the original listing agreement.

Reeds's testimony on this subject is as follows:

Q. When you came there, the contract had been prepared?

A. Yes, Paulson handed it to me.

Q. Do you recall who gave it to you and how it came?

A. Paulson handed me his and McGann the other.

Q. You remember it?

A. Yes.

Q. This paper exhibit "B" I think you testified is one of the duplicates?

A. Yes, sir.

Q. And did you read it over?

A. Yes, I did.

Q. Now, what did you say to Paulson after you read that contract over?

A. I said, "Who the devil authorized you to sell my land on them terms?" I says, "I never did," and he says, "I know you didn't,"—I told him I wanted 7 per cent on the stuff that run from the date of the contract if it run five years, and he says, "I know, but I couldn't get that;"—and I says, "This contract don't say anything about any inter-

est until the 15th of November;" and he says, "I will make that up, I will make that right;" and I says, "Here is another thing, this $9,000 runs five years and only 6 per cent interest, instead of 7 per cent;" and he says, "I will make that right, I will make that right."

Q. Was there anything said to Huey there about modifying it?

A. He told him but Huey wouldn't pay no attention to him.

Q. What did Huey say?

A. He told him, "No," he wouldn't do any more than he had done. . . .

Q. After he had made the statement that he would make up the difference, you signed the contract?

A. Yes.

Q. Has he ever made up any difference?

A. No.

The jury should have had an opportunity to consider this testimony under proper instructions. If it is true, the defendant never agreed to pay the plaintiff a commission measured by the difference between $16 per acre and $17.50 per acre, in consideration of the procurement by the plaintiff of a purchaser who purchased according to the terms of exhibit "B." The respondent presents a forcible argument to the effect that a change in the listing agreement which was assented to by the defendant would not alter the obligation to pay the commission previously agreed upon, but the facts and circumstances as testified to by the defendant go to show that there was a change, not only in the listing agreement, but one which affected the commission as well. In this state of the record, it was clearly error for the trial court to instruct the jury, which was done repeatedly in the charge, that if there was a change in the listing agreement and if the defendant assented to the sale with knowledge of the change, and while the plaintiff was still acting as his agent, he became bound to pay to the plaintiff the full amount of the commission which would have been earned had the sale been made according to the original listing agreement.

We have not overlooked the fact that the charge, the giving of which was held to be error in Paulson v. Reeds, 33 N. D. 141, 156 N. W. 1031, contained a statement somewhat similar to the one just referred to, and that it was not singled out as being erroneous in the opinion

rendered. But a careful reading of that case discloses that the principle according to which it was decided runs counter to the principle adhered to by the trial court in giving the instructions under examination. In the opinion referred to, the court cited with approval its own previous decision in the case of Anderson v. Johnson, 16 N. D. 174, 121 N. W. 139, wherein it was said: "It seems to have been the theory of plaintiff's counsel and also the trial judge that all it was necessary for them to prove in order to recover was the existence of the contract as pleaded, and that they produced the person claiming to own the property, and he, in fact, entered into a contract with defendant to sell the same to him upon some terms acceptable to defendant. In other words, even though Staiger was unwilling and refused to sell at the price of $2,300 [the listing contract], that, if defendant dealt with him on any other terms whatever, plaintiffs would still be entitled to their commission . . . This is clearly erroneous." Furthermore, the court said that if a dispute had existed "as to that part of the listing contract having reference to the terms upon which the land should be sold, and pending this dispute exhibit "B" [the sale contract] was produced and shown to Reeds as plaintiff's version of the listing contract, and Reeds then accepted the same, it would probably be presumed that he had receded from his position upon the contract, and had accepted the version contended for by plaintiff." Paulson v. Reeds, 33 N. D. 141–153, 156 N. W. 1031. But, according to the plaintiff's own admission, exhibit "B" was not produced as the plaintiff's version of the listing contract, but as an admitted departure therefrom. It cannot be said that by signing exhibit "B," under such circumstances, the defendant necessarily agreed to pay the original commission. See Steinfeld v. Storm, 31 Misc. 167, 63 N. Y. Supp. 966, and Reiger v. Bigger, 29 Mo. App. 421. The record in this case discloses clearly that the signing of exhibit "B" by the defendant, under the circumstances, was an equivocal act and one reasonably susceptible of the inference that Reeds was thereby expressing his agreement to the payment of a commission measured by the difference between the value of exhibit "B" compared to the contract originally contemplated, or an agreement by him to pay a reasonable commission, or, if the jury disbelieved his version and believed that of the plaintiff, that he was to pay the full

amount of the commission originally agreed upon, but was to be given until November 15th following to pay it.

This case is clearly distinguishable from the case of Gelatt v. Ridge, 117 Mo. 553, 38 Am. St. Rep. 683, 23 S. W. 882. In that case the contract, negotiated for the principal and to which he assented, gave him the benefit of the full net price stipulated in the listing agreement, and, at the time he assented to the terms of the contract, no question whatever was raised as to the amount of the commission. None of the authorities cited in the dissenting opinion seems to us to be applicable to a case such as is presented here. A careful examination of the cases cited will disclose that they merely support either of two propositions: First, that an owner of property who avails himself of the services of a broker and negotiates a sale of his property to a purchaser supplied by a broker is obliged to pay a commission; second, that where a broker supplies a purchaser, with whom the owner of the property negotiates a sale, such vendor cannot escape liability for the commissions agreed to be paid by taking over the negotiations and departing from the original listing agreement. Neither of these propositions is involved here, for the reason that the plaintiff is not attempting to recover on the *quantum meruit,* nor is it a case where he negotiated a sale differing in terms from the original listing agreement, in an attempt to avoid the payment of commissions. No authority has been cited, and we are confident none can be found, which will support the contention that an owner of property who has listed it for sale on stated terms and upon an agreed commission is bound to pay such commission to a broker who has negotiated a sale upon terms not previously assented to by the owner, where it is expressly agreed between the owner and the broker, at the time of the signing of the sale contract, that the broker is to receive a commission different from that originally stipulated. It is as competent for the parties to a commission agreement to alter it by mutual understanding during the course of performance as it is to thus change an agreement of any other character.

It is true the jury was instructed that the plaintiff, in order to recover, must establish the contract sued upon, and it was further told that exhibit "A" was to be considered in connection with all the other evidence in determining whether or not the defendant had assented to the alleged commission contract. But this general instruction, when

considered in the light of the entire charge given, cannot reasonably be said to have overcome the impression that must have been created by the repetition of the specific statement applicable to the transaction on June 28th. This statement was repeated in various forms, all meaning in substance that if an agreement ever was made, whereby the defendant undertook to pay as a commission all that was received for his land above $16 per acre, such agreement bound him to pay the full commission if he assented to the terms of the sale as made, while the plaintiff was still acting as his agent.

We do not agree with appellant's counsel wherein he contends that, under the complaint, which alleged an express contract entered into on the 28th day of June, 1910, there can be no recovery under the evidence in this case. There was ample evidence from which the jury could have found that the express contract upòn which plaintiff sues was made. There was, therefore, no error committed in refusing to grant the motion for a directed verdict. As we view the record, all of the evidence descriptive of the transaction had at the time of the signing of the sale contract should have been left to the jury under proper instructions, and from it they would have been warranted in finding that the defendant expressly agreed to pay the plaintiff the full amount of his commission, or that he expressly agreed to pay him a portion only of the commission originally agreed upon, or that no agreement whatever was reached, in which event, under proper pleadings, the recovery would be limited to the *quantum meruit*.

The judgment of the trial court is reversed and the cause remanded.

ROBINSON, J. (concurring). The plaintiff sues to recover $1,200 commissions on a sale of 800 acres. The jury found for the plaintiff, and defendant appeals. The complaint avers that in June, 1910, defendant owned the west half and the southeast quarter of 21 and the east half of 20 in 133–52; that he listed the land with plaintiff for him to sell on certain specified terms, and for securing a purchaser he agreed to pay the plaintiff such sum as he might realize from the sale over and above $16 per acre; that on the same day plaintiff procured for defendant a purchaser at $17.50 an acre and thereby earned $1,200.

The answer is a general denial. The claim of defendant is that the commission was to be $1 an acre and only 50 cents in case of a sale

made to a purchaser introduced to the agent by defendant, and that defendant did introduce a purchaser. Also that no sale was made in accordance with the terms on which the land was listed. Defendant also claims that the action is based on an express contract for the sale of land on express terms, and there is no evidence of a sale in accordance with the terms of the contract.

This is the third appeal to this court. The first appeal was from a judgment for $700, which was reversed because of error in the instructions of the court. Paulson v. Reeds, 24 N. D. 211, 139 N. W. 1135. The second appeal was from a judgment for $1,200. It was reversed because the court erroneously instructed the jury in effect that the signing of a paper known as exhibit A settled the question of commissions at $1.50 an acre. Exhibit A reads thus:

Martin Paulson:—

You are hereby authorized to sell my land west ½ and S. E. ¼ section 21 and east ½ 20–133–52 at $16 per acre net to me.

                                                    J. A. Reeds.

The court held that this exhibit does not mention the matter of commissions, and the word "net" does not amount to a contract to pay all of the purchase price over the net to the agent. Louva v. Worden, 30 N. D. 401, 152 N. W. 689. That when the owner lists real property for sale with a broker and at a net price, in the absence of an express contract to that effect, such broker is not entitled to receive as commissions all the selling price in excess of such list price, but is merely entitled to a reasonable commission not to exceed such excess. Ibid.

On June 28, 1910, defendant met one Mr. Huey and introduced him to the plaintiff as a land buyer, and on the next day he arranged with the plaintiff to purchase the 800 acres at $17.50 an acre. He was to pay cash $500, to pay on receipt of abstract $500, and on November 15, 1910, $4,000 and for the balance $9,000 to give a 6 per cent mortgage payable in five years. Such was the contract as reduced to writing and agreed to between the agent and the purchaser. When it was shown to defendant he turned to his broker Paulson and said in substance: "I never authorized you to sell my land on any such terms as that." Paulson said: "I know you did not, but that is as near as I could get

Huey to come to our terms." Reeds said: "I told you I wanted $800 a quarter down and 7 per cent balance." Paulson answered: "You said you would accept 6 per cent if the contract did not call for a mortgage running over three years." Defendant said: "But this thing calls for a mortgage running five years." Paulson said: "Perhaps we can get together and fix this up. Maybe Huey will make the interest 7 per cent or you will let the mortgage run for three years."

Huey refused to make any change. It is entirely clear there was no sale in accordance with the express terms on which defendant had agreed to pay a definite commission. As defendant contends, the terms of sale did not accord with the listing contract. When defendant objected to the contract of sale as drafted by plaintiff, the latter conceded that it was not according to the terms given him, but requested the plaintiff to sign it, saying that they could arrange the matter of commissions so as to make it right and satisfactory.

The defendant by his counsel duly requested the court to give to the jury numerous special instructions, which are to the effect that as this action is based upon an express contract in regard to the terms and conditions for the sale of the land, the plaintiff cannot recover without proving a compliance on his part with the terms and conditions. In other words, that to recover a specified brokerage commission in accordance with the terms of a special contract, the broker must prove a full compliance by him with all the terms of the contract.

The requested instructions were pertinent and material because the plaintiff's claim is based on a specific contract, and the evidence is that plaintiff did not produce a purchaser ready and willing to buy the land on the terms of the contract, and that no sale was made on any such terms. After listing the land the owner still retained the right to sell the same on any terms, or to permit his broker to sell at a reduced price and at a reduced or reasonable commission. By assenting to a sale at a reduced price or on different terms, the owner did not agree or bind himself to pay the listing commission though he may have bound himself to pay a reasonable commission; that is, what his services were reasonably worth under all the circumstances. The express listing commission is earned only when a person is produced who is ready, able, and willing to buy in accordance with the express listing terms. A contract with a broker to sell land or to procure a purchaser is governed by

the same rules as other contracts. It must be free and mutual, and the parties must agree upon the same thing in the same sense. In matters of dispute concerning a broker's contract for the sale of land and services under it, judges and juries have a right to use their common sense and common knowledge.

Concerning variations from the listing terms of sale, the court instructed the jury to the effect that they must award the plaintiff the specified commission of $1.50 an acre, regardless of any variation to which the defendant assented. That was gross error. Under such a law if the defendant had assented to the sale of his land at $17.50 an acre, payable in five or ten years without any interest, he would still be liable for a commission of $1.50 an acre. But by the terms of the listing contract the plaintiff was to have $800 cash on every quarter section and 7 per cent on the balance of the price from the date of sale. By the terms of the sale defendant had no interest on the price from June 28 till November 15th, and for five years his interest on $9,000 was reduced from 7 per cent to 6 per cent. That was the same as reducing the list price $791.33. There is testimony that when defendant objected to the new deal which he had not authorized, the plaintiff promised to make it good from his commissions. Had he done so the chances are there would have been no expensive lawsuit.

In this case the complaint should have stated not only a cause of action on the express contract, but also a cause of action alleging the reasonable value of the services rendered and accepted by defendant. And the jury should have been given proper instructions in regard to each cause of action. Hence, in furtherance of justice within thirty days after the return of the remittitur the plaintiff may amend his complaint by adding to it a cause of action based on the reasonable value of the services rendered and accepted.

GRACE, J. (dissenting). Appeal from the judgment of the district court of Richland county, Honorable A. T. Cole, presiding by request.

This action is one brought by the plaintiff against the defendant to recover $1,200 and interest alleged to be due the plaintiff as commission for making sale of a tract of 800 acres of land for the defendant.

The complaint is in the usual form. It describes the land which plaintiff claims he sold for the defendant, and sets forth a cause of

action upon an express contract. The third paragraph in the complaint reads as follows:

"That on or about the 28th day of June, 1910, the plaintiff and the defendant entered into an agreement whereby the defendant authorized, empowered, and employed the plaintiff to procure for him a purchaser of said lands upon terms then agreed upon between the plaintiff and the defendant, and agreed to pay to the plaintiff for his services therein such sum of money as might be realized from the sale of said premises over and above the sum and price of $16 per acre, and the plaintiff accepted such employment; that thereafter and on the same day the plaintiff procured for the defendant a purchaser, to wit, one W. G. Huey, who was then ready, willing, and able to purchase said lands upon the terms agreed upon between the plaintiff and the defendant, and who at said time did purchase the same from the defendant at the price of $17.50 per acre; that pursuant to the agreement between the plaintiff and defendant, the compensation of the plaintiff was to be paid by the defendant on or before the 15th day of November, 1910; that by reason of the premises the plaintiff earned and the defendant became justly indebted to the plaintiff in the sum of $1,200,—all of which is past due, has been demanded of the defendant, and is wholly unpaid."

The defendant in his answer admits the allegations in the complaint relative to the description of the land. The remainder of the answer consists of a general denial.

The facts in the case are substantially as follows: Defendant in the year 1910 was the owner of 800 acres of land located in Richland county, North Dakota. The plaintiff in the year 1910 was a real estate agent located at Wyndmere, North Dakota. Plaintiff claims that in the earlier part of the year 1910, probably in January of said year, the defendant listed the land in question with the plaintiff for sale, at a net price of $16 per acre, with $3,000 to be paid down when deed passed, the balance to run not more than three years, with mortgage back on the land to secure the balance of the purchase price at 6 per cent per annum. Plaintiff claims that at the time the land was listed defendant expressly promised to pay the plaintiff whatever the plaintiff sold the land for in excess of $16 per acre. The defendant claims that the cash payment should not be less than $800 per quarter section; and that should the deferred payments extend for a longer period than

three years, such payments should bear interest at the rate of 7 per cent per annum. The defendant contends that should he introduce to plaintiff a buyer for the land to whom plaintiff could sell the land, then plaintiff's commission should be only 50 cents per acre; but that if plaintiff procured the purchaser and made a sale to such purchaser, then the plaintiff should have $1 per acre.

On the 28th day of June defendant introduced a Mr. Huey to plaintiff as a prospective land buyer, and requested plaintiff to show Huey Reeds's lands. Plaintiff claims that the defendant asked plaintiff to show Huey his, Reeds's lands, with others, Paulson sold Huey Reeds's lands, being the 800 acres of land described in the complaint; not on the terms upon which the land was listed, but upon terms stated by Huey, and which were finally accepted by the defendant and reduced to writing and set forth in exhibit B. Paulson, after showing the land to Huey, procured Reeds to sign exhibit A, which reads as follows:

Wyndmere, North Dakota, June 28th.

Martin Paulson:—

You are hereby authorized to sell my land, the west half and the southeast fourth of section 21, and the east half of 20–133–52, at sixteen dollars ($16) per acre net to me.

J. A. Reeds.

After exhibit A was signed, Paulson wrote the sales contract, exhibit B, in duplicate. The cashier of the First National Bank of Wyndmere acted as notary public in the execution of the contract between Reeds and Huey. After exhibit B was drawn, it was read by Reeds while in Paulson's office. Reeds discovered that the contract contained terms of sale of the land different from those upon which he had authorized Paulson to sell the land. Paulson admitted the terms were not in accord with their agreement, but informed Reeds that was as near as he could get Huey to come to Reeds's terms. Reeds said he had told Paulson he wanted $800 a quarter section down and 7 per cent on the balance. Paulson claimed Reeds said he would accept 6 per cent if the contract did not call for more than three years. Huey refused to make any change in the contract, but stated that he might pay the whole

thing up inside of a year. The contract was finally signed in the form of exhibit B.

This action is one to recover commissions upon an express contract for the sale of the land hereinbefore referred to. The case is more easily understood if it is divided into three parts,—one relating to that part of the express contract concerning commissions; second, that part relating to the terms of the contract upon which the land was to be sold; and, third, that part relating to the terms upon which the land was sold and the sale accepted.

It must be conceded that the defendant was the owner of the land; that he authorized the plaintiff to sell it; that plaintiff did sell it to Huey; that defendant agreed to pay plaintiff a commission for making such sale. The merest inspection of exhibit A, which we have above set out, discloses that it is not a complete contract with reference to its subject-matter. It is silent as to the terms of sale, and as to the commissions to be received by plaintiff for making such sale, if such sale were made. It is evident, therefore, that the contract with reference to commissions is a separate part of the whole agreement which was made in addition to exhibit A, and, if made, is proper to be proved by parol testimony. The appellant claims that the plaintiff should be limited in his proof of an express contract with regard to his legal right to recover in pursuance of such express contract such commission to the time expressed in the complaint, as on or about the 28th day of June, 1910. We are not inclined to agree that the complaint should be so strictly construed as to limit the proof to that particular time, in view of the fact that it must be conceded there was some agreement with reference to the promise and agreement by the defendant to the plaintiff of a commission for the sale of such land, and that is the important point, and the time of the agreement is not so material or essential. However, if the proof should be limited to about the time of June 28th, we are of the opinion that there is sufficient proof of an agreement at that time by the defendant to pay the plaintiff a commission to support the verdict of the jury.

The following testimony given by the plaintiff is very pertinent:

Q. Now, what was the talk had at the time exhibit A was signed?

A. When I handed it to him he read it, and he says, "Paulson, I

cannot pay a commission out of this." I says, "Mr. Reeds, that is net to you." He says, "All right." Then he took the pen and signed it, and he says, "What do you get for it—I suppose you get $20 an acre?" and I says, "No, I do not;" I says, "I get $17.50 an acre."

Q. Afterwards, did Reeds come to your office?

A. Yes, sir.

Q. Did you go to meet him, or did he happen to come there, if you know?

A. I started to get him and McGann, and I met Reeds. He started to my office, and I met him just outside my office door.

Q. You were on your way to get McGann?

A. Yes, sir.

Q. At that time was there anything said between you and Reeds about the sale of this land—anything in connection with it?

A. Yes, sir.

Q. Now, what was said there?

A. He said, "Paulson, I want half of what you get above a dollar an acre of your commission."

Q. What did you say?

A. I said, "No, we will abide by your agreement."

Upon cross-examination the witness Paulson again gave substantially the same testimony.

It is evident from such testimony of the plaintiff that Reeds then understood that Paulson was claiming to be entitled to a commission amounting to $1.50 per acre. Reeds knew the net selling price of the land to him was $16 an acre. He at that time knew that Paulson was selling the land for $17.50 an acre, and knew that Paulson was claiming $1.50 an acre as his commission for making such sale, and that Paulson refused to divide the commission with Reeds above a dollar an acre; and that with all this knowledge, talk, and understanding Reeds executed the contract, exhibit B. We are of the opinion, therefore, that such conversation with respect to these matters at the time of the execution of exhibit A supports plaintiff's claim as to the terms of the agreement as to commissions, and supports plaintiff's claim as to the commission which should be paid the plaintiff for the sale of such land, and that the evidence of such agreement supports the verdict

of the jury, at the time of the signing of exhibit A, and the time of the conversation as to commissions which occurred at such time in abiding by the agreement as to commissions. We are further of the opinion, notwithstanding the claim of the appellant, that the plaintiff should be limited in proof strictly to that which would establish the agreement on or about the 28th of June, 1910, that it is proper to permit the plaintiff to introduce other proof tending to establish any agreement between these parties whereby defendant agreed to pay the plaintiff a commission for the sale of the land in question, it being also shown that subsequent to such agreement plaintiff did sell the land. The plaintiff does not allege that the agreement was made exclusively on the 28th day of June, but alleges that it was made on or about the 28th day of June; and by giving to the pleadings and the complaint in this case that liberal construction which has become a fixed rule in our jurisprudence, to the end that substantial justice may be done between parties litigant, we are of the opinion that any talk or agreement between the plaintiff and defendant in January, 1910, having reference to commissions for a sale of the land in question, by the plaintiff, which sale was later effected by the plaintiff, is not too remote and is so closely connected with the whole contract with reference to the sale of such land, including the matter of commissions, that the same was properly admitted. Especially is this true when we keep in mind that we must seek elsewhere than exhibit A, not only to find the agreement as to commissions, but also as to the terms upon which the land was to be sold.

With reference to what was said in regard to commissions in January, Paulson testified as follows:

Q. Mr. Paulson, I will ask you to state now to the court and jury as near as you can recall it what Reeds said to you, and what you said to him about the sale of the lands involved in this case at the time of the talk you say you had in January.

A. He asked me on what conditions I handled the land, and I told him as a rule I listed it at a net price to the owner, and whatever I get above that would be my commission, and he said: "That is all right with me. I want that much net to me, and I will give you what you get."

If this testimony is true, it shows conclusively the agreement between the parties as to the commission. In view of the fact that the agreement in regard to commission was a parol agreement, and the further fact that the plaintiff actually did make a sale of the land in question, any testimony which would tend to establish or show the agreement between the parties as to the amount of commission to be paid was relevant and material testimony, and was admissible as such even though such conversation and talk between the parties with reference to the commissions was at a different time than June 28th, the material and important point being whether such agreement was actually made between the parties, and if a sale of the land was made by plaintiff, and not when it was made. There was testimony on behalf of the defendant tending to show that if he brought the purchaser to the plaintiff the plaintiff would then receive only 50 cents an acre, but that if plaintiff procured the purchaser, then the plaintiff should receive $1 per acre. All this testimony was for the jury. What contract for commissions, if any, was made between the plaintiff and defendant, was a question of fact to be determined by the jury from all the testimony, circumstances, and facts in the case. The jury heard the testimony of plaintiff and defendant, and their respective witnesses, and determined that the plaintiff was entitled to the sum of $1,200 for his commission for making such sale of such land, and the verdict of the jury is sufficiently supported by the evidence. We are satisfied there was no prejudicial error in the admission of any of the testimony which had reference to the agreement in regard to commissions.

The second and third points may be considered together, they having reference to the terms upon which the land was to be sold, and the terms upon which the land really was sold. It may be conceded that the terms upon which the land was sold were different from the terms upon which plaintiff was to sell the land by reason of his original agreement. It is claimed by the plaintiff that the first arrangement was that $3,000 was to be paid down on all the land at time of sale, and the balance was to be carried a certain time at 6 per cent. On the other hand, the defendant claims the down payment was to be $800 per quarter section, and the balance, if paid within three years, was to draw interest at 6 per cent, but, if for a longer period, at 7 per cent. The land was actually sold on the following terms: $500 at the

time of the sale, $500 when the abstract was furnished showing merchantable title, and $4,000 on November 15, 1910, deed then to be furnished, and balance to run five years at 6 per cent. It will be seen that these terms are entirely different from the terms stated either by the plaintiff or defendant, but they were the actual terms upon which the plaintiff sold the land and which sale was accepted and agreed to by the defendant as is more clearly shown by exhibit B, the written contract of sale wherein the terms are fully set forth. The defendant seeks to escape the payment of the commissions in question upon the theory that plaintiff undertook to sell such property upon certain terms, and did not do so; and having failed to sell upon those terms, and did sell upon other terms which were accepted by the defendant, the defendant denies any liability to plaintiff for commissions. The defendant claims the plaintiff cannot recover because he did not sell upon the terms which were given him by the defendant. There is no question of deception, fraud, or false representation in this case. When the defendant executed exhibit B, he knew that the terms of the sale therein stated were not the terms upon which he had theretofore agreed to sell said land. The plaintiff also knew that the terms were not the same as agreed upon between plaintiff and defendant, although plaintiff and defendant do not agree on what the actual terms were. The defendant called plaintiff's attention to the fact that the contract for the sale of the land contained different terms than those upon which the land was to be sold. The plaintiff agreed with him the terms were different, but claimed they were the best terms he could get Huey to make, and Huey would not close the contract and buy the land upon any other terms. There was some testimony which tended to show that Huey might pay all the purchase price within a year, and the record does show that Huey subsequently paid all the purchase price and took a deed to said land to his wife. It does not appear from the record that by reason of the change in the terms of the contract Paulson should receive any different commission than that theretofore agreed upon. The agreement as to commission was unchanged so far as it was affected by the difference in the terms which were expressed in exhibit B, the written contract, and those terms upon which the land was to have been sold. There being no change in the agreement with reference to the price of the land, or amount of commissions by reason

of such change in terms, the plaintiff is liable as a matter of law for the commissions as agreed upon. Reeds did not have to sign the contract, exhibit B, if he did not care to. He could have refused to execute such contract for the reason that the same did not express the terms upon which he agreed to sell the land, and in that event Paulson could have recovered no commissions from him. But Reeds having accepted other terms upon which said land should be sold, the price remaining the same, and having executed such contract ratifying such terms, nothing further being said about the commission agreement, he was legally liable and bound to pay the commissions as defined by the agreement, and the commissions were fully and fairly earned by the plaintiff.

Appellant lays great stress upon the listing agreement. What then was the listing agreement? It is certain that exhibit A is at least not all of the listing agreement, even though it is considered part of it. We must look elsewhere for the terms of the listing agreement; that is, the time of the payments, and the rate of interest on deferred payments. We must look elsewhere also for the agreement as to the commission, if any, which was to be paid plaintiff for making such sale. All of these taken together in this case constitute the listing agreement, and constitute the contract between plaintiff and defendant. It cannot be said that after such contract or listing agreement was agreed upon between the parties, if it were so agreed upon, that it could not be thereafter changed by the subsequent agreement or conduct of the parties, the contract being largely oral. And in so far as such listing agreement or contract with full knowledge of both parties was changed, or if the conduct or acquiescence of the parties was such as to approve or ratify such change in the terms of the contract, it would be binding upon both of them. The contract or listing agreement was changed by changing the terms of the sale of such land, that is, by the payment of an amount down at the time of the sale different from that which was formerly to have been paid down at the time of sale; another sum payable at the furnishing of the abstract; another sum on the 15th day of November, 1910; and the balance paid in a certain manner as shown by exhibit B, all of which terms were different from those claimed by the defendant or the plaintiff, and from the terms specified in the original listing contract. This is the only manner in which the old

contract was changed. This change affected only that part of the contract which was made orally. Nothing was said about any change in that part of the contract relative to commissions; and what the contract was with reference to commissions was a question of fact for the jury under all the facts and circumstances of the case. The jury found that plaintiff was entitled to recover the sum of $1,200. They found, therefore, that plaintiff was entitled to all the excess for which plaintiff sold said land over and above $16 an acre, which was in accordance with the testimony of plaintiff as to what the contract really was with reference to commissions, as understood and agreed by and between plaintiff and defendant in January, 1910. The jury disbelieved what the defendant testified to as to what the understanding and agreement was with reference to commissions had in the month of January, 1910, and believed the plaintiff's testimony, not only as to the understanding and agreement, if any, had in the month of January, but at any other time up to and including the time of the execution and delivery of exhibit B. Exhibit A did not by any means contain all the terms of the contract between the parties. It was therefore competent to introduce oral testimony to show what the remaining terms of the contract were which were not included in the written contract; and what such contract was, was a question of fact exclusively for the jury under all the testimony, facts, and circumstances of the case. This view of the situation results in this court holding that not only exhibit A, but all the negotiations between plaintiff and defendant commencing with January and up to and including all of the time to the execution of exhibit B, are to be taken into consideration, and that the making of the contract between the plaintiff and the defendant was not in fact concluded until the signing of exhibit B, at which time the difference in the terms of the sale of the land was known to the defendant and the reasons explained to him why such terms were so changed, which was that the terms of exhibit B were the only terms on which the purchaser would deal, and having such full knowledge of such changes and nothing being said about any other changes in the contract between plaintiff and defendant referring to commissions, the contract, exhibit B, was knowingly and willingly executed by the defendant. It follows, therefore, that the plaintiff procured for the defendant a purchaser who purchased the land upon the terms agreed upon between plaintiff and

defendant, considering that the whole contract between plaintiff and defendant was not complete until the time, or about the time, of the signing of exhibit B. In this view of the whole matter, we are of the opinion that the plaintiff complied with the terms of the contract, and is entitled to recover his commission in the amount found by the jury. Even if the plaintiff in this case was required to bring himself within the rule laid down in Anderson v. Johnson, 16 N. D. 174, 112 N. W. 139, we are of the opinion that under the facts and circumstances of the case, including the making of the contract of listing between plaintiff and defendant, and considering that the contract was really in the making commencing with January and ending at the time exhibit B was signed, that plaintiff has brought himself within the rule laid down in that case.

What is a listing contract? It may be said to be a contract whereby one, the owner of the property, confers upon another, his agent, the right and authority to sell such property to anyone whom the agent may find as a purchaser upon terms and conditions specified in such listing or agency contract; but even so, after the time of the making of such contract with the agent, or the conferring of such authority upon him, there is nothing to prevent the parties from subsequently agreeing and consenting to a change in the terms of such contract, and in so far as such contract was subsequently changed by the agreement, both parties would be bound thereby, and this being an oral contract, it could be modified orally or by the acts and conduct of the parties. Sunshine Cloak & Suit Co. v. Roquette Bros. 30 N. D. 143, L.R.A.1916E, 932, 152 N. W. 359. The listing agreement or contract is in effect the authority of the principal to the agent to sell certain property upon certain terms. If the principal changes the terms of the agency or listing contract, and there is no objection to such change by the agent, and he assents to or acquiesces to such change, the listing contract then, as between the principal and the agent, is not the same as it was before, but the listing contract or authority to sell is the listing contract or authority as changed. Whatever authority the agent had to make the sale of the property at the time the sale was made constitutes the authority or listing contract, and this is determined not alone by the original listing contract, but by the original listing contract as it is after it is modified or changed and such changes are agreed to by the parties

or impliedly consented to by their acts and conduct. If an agent has a listing contract or authority to sell land or property, which includes the terms of sale, he cannot sell contrary to such terms and contrary to his authority and recover a commission, but his power and right to sell the property and recover commissions for making such sale are to be measured by his right and authority to sell at the time the sale is consummated.

The appellant has assigned a large number of errors, many of which relate to the exclusion of testimony and the admission of testimony. In all such errors assigned by the appellant which refer to the reception of certain evidence objected to by the defendant, or the exclusion of certain evidence offered by the defendant, there is no reversible error, nor was there reversible error in the court overruling certain motions made by the defendant to strike out certain testimony offered by the witness Paulson. The court was not in error in refusing to grant the defendant's motion for a directed verdict. The court was not in error in permitting the reception in evidence of any of the exhibits offered and received in evidence. The court was not in error in permitting the plaintiff to read the evidence of the witness McGann given on a former trial of the same case in the same court, which case was appealed to the supreme court and a settled statement of the case had in such appeal, it appearing by competent testimony in this case that the witness McGann was permanently located in the banking business in the state of South Dakota, and as a matter of law was not therefore a resident of this state at the time of this trial. There was no error in refusing to give any of the instructions of law requested by the defendant, nor error in refusing to charge the jury as the defendant had requested. There was no error in the court's instructions to the jury as given. The charge was full, fair, and complete, and was a careful and clear statement by the court to 'the jury of the law relative to the legal principles involved in the whole case. The case is one which has been bitterly contested. Each party to the litigation has been represented by able and astute counsel. The rights and claims of the respective parties have been ably asserted and defended by the respective counsel. The trial court was most eminently fair to all parties, and took exceedingly great pains that no testimony should reach the jury which was not competent, and if incompetent testimony was offered

in the presence of the jury or if the respective counsel in the discussion of various legal propositions might have said something irrelevant to the case, in the presence of the jury, which might tend to prejudice their minds, the court again and again cautioned the jury to disregard all such irrelevant matters. The case having thus been fairly presented to the jury, and they having carefully considered. the same, and returned their verdict into the court, and there being no reversible error in the record, the verdict of the jury should stand as given.

The majority opinion reverses the judgment only for two reasons, namely: First, failure of the court to give some instruction with reference to the consideration of the testimony in the case, which testimony is to the effect that, at the meeting where exhibit B was signed, defendant signed exhibit B with the understanding then and there had that the plaintiff was to make up the difference between the value of the sale contract as made, and the contract as it would have been had the sale been made according to the original terms. The difference claimed is approximately $700. All of this testimony is set forth in the majority opinion. Second, that certain of the instructions of the court were erroneous, which were to the effect that if the defendant signed exhibit B while plaintiff was acting as his agent, knowing at the time he signed it that it did not contain the terms of the contract, that the plaintiff had been authorized to negotiate for him, he would be bound to pay to the plaintiff his full commission,—$1,200. For these two reasons, the judgment of the trial court is reversed. We are positive there is no merit in either of these reasons assigned in the majority opinion when clearly analyzed and examined. The first reason assigned is without merit when it is remembered that the entire charge of the court must be construed together; and if, as a whole, it fairly and fully advises the jury as to the law of the case, certainly there should be no reversal. The court again and again instructed the jury that, in order for the plaintiff to recover in the action, the minds of the parties must have met upon the proposition of the plaintiff acting as agent or broker for the defendant, and their minds must also have met upon the matter of the amount of the commission agreed to be paid to plaintiff. As to that matter, their minds must have met upon the proposition of the plaintiff receiving as a commission all above the

sum of $16 per acre received from the sale of the lands in question, as the plaintiff rests his case upon an express contract founded upon such claimed agreement. The court even went much further than this and instructed negatively upon the same subject, to the effect that, if the jury found from the evidence that the contract claimed by the plaintiff was not entered into and agreed upon by and between plaintiff and defendant; in other words, if the jury found that at no time did the minds of the parties to this action meet upon the proposition alleged by plaintiff, to wit, that the defendant was to have a net price of $16 per acre and the plaintiff to have all received above that as his commission, and it being agreed between the parties that the land sold for $17.50 an acre,—then the jury should find a verdict for the defendant. The court, therefore, clearly submitted to the jury all the testimony with reference to the making of the contract regarding the amount of commission which was to be received by plaintiff in case of sale. Certainly the court could not, and it would be improper, or if not improper, unusual, to set out certain testimony and refer to it specifically and give an instruction of law thereon. The questions to be decided by the jury were, What was the contract as to the commissions? What was the net price of the land? And what was the land sold for? All these questions were carefully submitted to the jury in order that they might determine from all the testimony what, in fact, was the contract between plaintiff and defendant as to the commissions to be received by plaintiff in case of sale. The court did not refer, and properly so, to any testimony of the plaintiff along these lines, and just as properly did not refer to any of the testimony of the defendant. The court instructed the jury to find what the contract was, and in order for the jury to do this, they must, and no doubt did, consider all of the testimony. It would be an unheard of proceeding for the court to reiterate to the jury certain testimony either in behalf of the plaintiff or defendant and then give instructions to them as to the consideration of such testimony. Certainly, there is nothing in this record to show that the jury did not consider all of the testimony, and the case was submitted to them with the instructions given and reiterated time and again to determine what, in fact, was the contract between plaintiff and defendant, and the jury did this, and in doing so considered all the testimony in the case.

It is difficult to conceive how the court could give a clearer and more specific charge, one open to so little criticism in this regard. Clearly, the contention that it was error not to give an instruction upon the testimony set forth in regard to this matter in the majority opinion, is absolutely without any merit whatever. By any stretch of imagination, prejudicial error cannot be predicated upon failure of the court to call attention to such testimony specifically, especially where the subject to which such testimony referred was submitted to the jury, and the law relative thereto fully and thoroughly explained.

The jury in arriving at their verdict as to what amount of commission had been earned by plaintiff under his contract were instructed to consider all the testimony. The jury did consider all the testimony relative to the amount of commission which plaintiff had earned under his express contract. In considering all the testimony the jury must have and did consider the testimony given by the defendant with regard to the alleged conversation had with the plaintiff just before the signing of exhibit B, wherein defendant claims to have called the attention of the plaintiff to the difference in interest, which is claimed to amount to about $700, and which defendant claims plaintiff agreed to make good. All this testimony, however, was for the jury. All the testimony in regard to this difference was considered by the jury, and the jury evidently must have considered such testimony as not having any weight. The jury could have found that, under the agreement pertaining to commissions, there was $1,200 due plaintiff, but that on account of the alleged agreement whereby plaintiff was to make up the difference of $700, that amount should be deducted from the whole commission, leaving only $500, but the jury evidently, after considering all the testimony, refused to give any weight or credit to the testimony of the defendant with reference to the $700 difference, and found as a matter of fact that the plaintiff had earned his whole commission of $1,200. The evidence of the defendant relative to the $700 claim is part of the evidence relative to what the commission contract in fact was. That testimony, together with all other testimony, as to what commission plaintiff was to receive for making such sale, was to be considered by the jury, and they were to determine from all such testimony on what contract for commissions for making sale of said land the minds of the plaintiff and defendant actually met. That was the

question submitted to the jury, and which was to be determined from all the testimony in the case with reference thereto, and the court's instructions dealt fully with the subject of the contract with reference to the commission to be paid plaintiff. The jury were fully instructed as to the law. The jury did determine, as a question of fact, what was the contract as to commissions earned by plaintiff, and the finding is conclusive.

As to the second reason for reversing the judgment, we desire to say that, if the court had given any other instruction except that which it did give, it would not have stated the law of this case. The court gave the only possible instruction it could give. The change in the terms of the contract were all submitted to the jury under full instructions. The jury was instructed that, if there were any changes in the terms of the contract to which defendant did not assent, plaintiff could not recover. The court's instructions in this regard are so full and explicit that there is no need of further explanation of their meaning. We say it is the law that where, as in this case, a person authorizes another to sell his property for a stated sum upon certain terms, and agrees to pay therefor a stated commission, and thereafter the terms of the sale are modified, no change being made in the amount of commissions to be paid, and the sale is made upon the modified terms with the knowledge, consent, and approval of the owner of the property, and he ratifies the sale, then he is obligated to pay the commission originally agreed upon. This was the instruction of the court, and if the court had instructed the jury otherwise, and the plaintiff had been defeated, an instruction other than the one given undoubtedly would have been reversible error. In other words, the plaintiff cannot recover at all, unless he can recover under the law as laid down by the court and contained in its instructions to the jury. No other instruction is applicable to this case, because it clearly sets forth all the law that is applicable to this case. If the plaintiff recover at all, he must recover for a sale under the modified contract; he must recover his commissions under an express contract; and for making a sale of the property, the terms of which are those contained in exhibit B. Exhibit B contains the terms of contract for sale. The plaintiff must recover his commission, if at all, for making that sale; and we claim that, plaintiff continuing to act as defendant's agent at the time exhibit B was signed,

and being the procuring clause of such sale, and exhibit B being read by defendant before signing the same, and he having signed the same with full knowledge of the terms therein, and having fully approved of the sale, and accepted the new terms, and received the money, and fully completed the sale, thus fully ratifying such sale, he is legally bound to pay the plaintiff his commission as determined by the express contract; and the terms of the express contract for commissions were submitted to, and determined by, the jury, under all the testimony, facts, and circumstances of the case. Contracts of brokerage between brokers and owners of property are exceedingly many, and each must be construed in the light of the terms which it contains. In the case of Gelatt v. Ridge, 117 Mo. 553, 38 Am. St. Rep. 683, 23 S. W. 882, we find a parallel case to the one at bar. The reasoning of the court in that case is so lucid that it is impossible to misunderstand it. In that case the contract was in writing, and it would greatly aid, we believe, the majority to understand the contract under consideration, if they would contemplate the original contract in this case as being in writing, and then the modification of the written contract which the testimony in this case shows was made. If the contract and its modification had been in writing, and no change in the written contract was made with reference to commissions, there could be little doubt as to what the conclusion of the majority would be. The court in that event, no doubt, would hold that the terms of the written contract as it existed at the time of sale were binding and effective, and such written contract would be construed in the light of the terms therein contained. The elements of the contract in the Missouri case are as follows: Thomas S. Ridge, by an instrument in writing, authorized Gelatt to sell certain property in Kansas City for the sum of $70,000; terms of sale, $30,000 cash in thirty days from date, $10,000 cash in three days from date, and the remainder, $23,000 in six months, with interest at 6 per cent; purchaser to pay an encumbrance of $17,000 bearing 7 per cent interest. Ridge agreed to pay Gelatt for making such sale on the above terms, $1,400, and any excess obtained for said property above said price. On the next day after making such contract Gelatt, the agent, sold the property to Brady, upon the following terms: Sale price, $72,000; earnest money, $500; $10,000 in two days from date, $500 of which had been paid, $25,000 on delivery of deed, $21,000 six

months from date of deed, at 6 per cent, and assume $17,000 encumbrance with 7 per cent interest from date of said deed. After Gelatt had procured these terms from the purchaser, they were submitted to the owner of the property, Ridge. These terms of sale were submitted to and approved by Ridge. Another time was appointed at which the written contract was to be signed and balance of the cash payment made. At the subsequent meeting, it was disclosed that a tenant occupied a portion of the premises and the evidence tended to prove that the defendant agreed to arrange with him in regard to vacating the premises. At the meeting subsequently held, when the written contract was to be signed, the owner of the property refused to carry out the contract unless the purchaser would take the property subject to the lease of the tenant, which the purchaser declined to do. It was shown that the purchaser of the property was able, ready, and willing to carry out the contract. The sale was finally consummated on the terms procured by Gelatt, but Ridge refused to pay the commission, and suit was entered to recover the same. The complaint was amended and changed alleging the authority to sell and agreement as to the commission, as contained in the written contract, and sale on the terms contained in the receipt, and ratification of the sale upon these terms, and a final consummation of the sale by the execution of the deed. This is exactly the condition in the case at bar, and the Missouri supreme court in its decision uses the following language: "It is next contended that there can be no recovery for the reason that the contract made by the agent varied from the terms of his authority, and that this would be the case though the terms of the sale made were more advantageous to the principal than was required under the letter of authority. There is no doubt, as a general principle of law, that an agent must act within the terms of his authority, and a substantial variance therefrom would defeat his right to compensation, though such variation may have been advantageous to his principal." Nesbitt v. Helser, 49 Mo. 384. Yet, it is well settled that if the principal ratify the contract made by the agent, the substituted terms become a part of the original agreement and can be enforced as such. Woods v. Stephens, 46 Mo. 556, and cases cited. The evidence tends to prove that it is very conclusive that defendant did fully approve and ratify the terms of the sale as made by plaintiff, and from the instructions, the jury must have so found. The suit was

not upon the *quantum meruit* as claimed by defendant, but was upon the original contract as made and supplemented by the ratification and acceptance of defendant. If, as before stated, the departure by the agent from the terms of the authority given may become, upon approval and ratification by the principal, a part of the original contract, the compensation, if fixed therein, should be measured thereunder. Also to the same effect was Notkins v. Pashalinski, 83 Conn. 458, 76 Atl. 1104, 20 Ann. Cas. 1023; Delta & P. Land Co. v. Wallace, 83 Miss. 656, 36 So. 263; Shober v. Blackford, 46 Mont. 194, 127 Pac. 329; Hubachek v. Hazzard, 83 Minn. 437, 86 N. W. 426; Prindle v. Allen, 164 Mich. 553, 129 N. W. 695; Weeks v. Theodore Smith & Co. 79 N. J. L. 388, 75 Atl. 773; Hobbs v. Edgar, 23 Misc. 618, 51 N. Y. Supp. 1120; Smith v. Sears, 160 Ill. App. 240; Dexter v. Campbell, 137 Mass. 198; Carnes v. Finigan, 198 Mass. 128, 84 N. E. 324.

The reasoning of the majority opinion is centered in the following paragraph, which, when thoroughly analyzed, will be found to contain its own refutation. The paragraph is as follows: "No authority has been cited, and we are confident none can be found, *which will support the contention that an owner of property who has listed it for sale on stated terms and upon an agreed commission is bound to pay such commission to a broker who has negotiated a sale upon terms not previously assented to by the owner, where it is expressly agreed between the owner and the broker at the time of the signing of the sale contract that the broker is to receive a commission different from that originally stipulated. It is as competent for the parties to a commission agreement to alter it by mutual understanding during the course of performance as it is to thus change an agreement of any other character.*"

The majority opinion assumes a condition it seems to us does not exist, *viz.,* that the sale was not made upon terms previously assented to by the owner. We say the sale in fact was made upon terms previously assented to by the owner, and which the owner understood, knew, ratified, and accepted the benefit of. The owner did this when he signed exhibit B with full knowledge of all its terms,—ratified exhibit B and accepted the benefits thereof. The majority opinion is again wrong in assuming that at the time of the signing of the sale contract there was an agreement that the broker was to receive a commission different from that originally stipulated. Whether there was such an ad-

ditional agreement was a question of fact for the jury. The jury found there was no such additional agreement, and therefore found against defendant's contentions in regard to the $700 interest claim, which was the only change in the commission agreement attempted to be shown by the defendant. The defendant having failed to do this before the jury, who were the exclusive judges of fact, the reasoning of the majority of the court does not therefore have any force in this regard. The majority opinion, in the paragraph referred to, states that it is competent for the parties to a commission agreement to alter it by mutual understanding during the course of the performance. This is no doubt true, but the very question whether any such change was made was submitted to the jury, and the jury disbelieved defendant's testimony in this regard and found in favor of the plaintiff. It appears to us that the majority of the court are clearly in error in arriving at their conclusion in this case. The facts in this case have three times been submitted to a jury, the members of which were the peers of both plaintiff and defendant. Three times have the jury returned a verdict in favor of plaintiff. Under such circumstances it is fair to presume that a different result will not be had upon a new trial. This principle was enunciated by this court in the case of Blackorby v. Ginther, 34 N. D. 258, 158 N. W. 354, where the court used the following language: "A new trial will ordinarily not be awarded where it would be ineffectual, or if there is no reasonable prospect that the result would be different upon a new trial."

Another principle enunciated in that case is that, where a verdict has substantial support in the evidence, the supreme court will not weigh conflicting evidence.

In the case of Soules v. Northern P. R. Co. 34 N. D. page 10, L.R.A.1917A, 501, 157 N. W. 823, the court laid down this principle, which is set forth in the syllabus of the case: "The charge to a jury must be taken as a whole, and where such charge as a whole clearly presents the issues of the case, mere technical defects in portions thereof are not grounds for reversal of the judgment."

We are clear the judgment should have been affirmed.