## RED RIVER VALLEY LAND COMPANY, a Corporation, Respondent, v. A. E. HUTCHINSON, Appellant.

(170 N. W. 317.)

**Broker — sale of lands — commission on — express contract — action to recover under — owner participating in negotiations for sale — reducing price — without knowledge of broker — without change of agency or agreement — full commissions recoverable.**

1. In an action by a broker to recover commissions earned under an express contract upon a sale of real property, where it appeared that the owner of the property co-operated in the negotiations with a purchaser produced by the broker, and where, during the process of the negotiations, the gross price was scaled by the owner before the final contract of sale was executed, without any modification of the agreement relating to commissions and without a termination of the agency, it is *held* that the broker is entitled to recover the full commission.

**Evidence — verdict — supported by.**

2. The evidence examined and *held* to support the verdict.

Opinion filed November 30, 1918.. Rehearing denied December 26, 1918.

Appeal from the District Court of Cass County, *A. T. Cole, J.*

Defendant appeals.

Judgment and order affirmed.

*Sinness & Duffy,* for appellant.

Upon an express contract set out in the complaint, the proof must be specific in support thereof, and proof of a different agreement, if allowed, amounts to a failure of proof, and entitles defendant to a directed verdict, upon motion therefor. Graangaard v. Betzina, 33 N. D. 267; Chaffee v. Widman, 48 Colo. 34, 139 Am. St. Rep. 220, 108 Pac. 995.

Where lands are listed with a broker for sale upon stated terms, the broker to receive a fixed sum as commissions, the execution of such listing contract to the point of supplying a purchaser ready, willing,

Note.—On effect upon the right of real estate broker to commissions of fact that owner sells to broker's customer at reduced price, see note in 15 L.R.A. (N.S.) 272, and 34 L.R.A. (N.S.) 1050.

and able to buy upon the terms stated, is the condition precedent to the right to recover the agreed compensation. Paulson v. Reeds (N. D.) 167 N. W. 371; Anderson v. Johnson, 16 N. D. 174; Fulton v. Cretian, 17 N. D. 335; Ball v. Dolan, 18 S. D. 558, 101 N. W. 719; Terry v. Bartlett, 153 Wis. 208, 140 N. W. 1133; Gilmore v. Bolio, 165 Mich. 633, 131 N. W. 105; Gelatt v. Ridge, 117 Mo. 553, 38 Am. Rep. 683; Eggland v. South (S. D.) 118 N. W. 719.

"If a broker fails to bring a customer to terms, and then abandons the negotiations or they are broken off, he is not entitled to a commission where a sale is subsequently made by the owner to the customer through independent negotiations." 9 C. J. 621; Ball v. Dolan, 21 S. D. 619, 15 L.R.A.(N.S.) 272, 114 N. W. 998; McFarland v. Boucher, 153 Iowa, 716, 134 N. W. 91.

*Charles A.* and *Charles M. Pollock,* for respondent.

The law applicable to such cases is well settled in this state. Paulson v. Reeds, 156 N. W. 1033.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff and from an order denying a motion for a new trial, which were entered in the district court of Cass county. The action was brought for the recovery of a commission of $5,000 alleged to have been earned in negotiating a sale of the defendant's land. The contract upon which the action is brought is alleged in the complaint as follows:

"That said defendant on or about the 20th day of May, 1916, offered in writing to this plaintiff through its said agent, Ingstad, that if it would become the agent of said defendant and make a sale of said property upon the conditions and terms agreeable to said defendant, he would pay a commission for doing the work in connection with making such sale in the sum of five thousand dollars ($5,000) to be paid when the deal was completed."

The facts necessary to an understanding of the questions presented upon this appeal are as follows: The defendant and appellant Hutchinson in 1916 was a farmer and real estate dealer, residing at Minnewauken, North Dakota, and was the owner of a tract of land of considerable size which he was desirous of selling. In order to facilitate the disposition of the tract, the defendant caused to be printed a cir-

cular in which was set forth descriptive matter concerning the farm, with special reference to its attractive features. The farm was described in the folder by reference to an outline map which was a part thereof, and which showed that the boundary lines of the farm were irregular; that on one side they did not run in straight lines, due to the fact that a portion of the land embraced within the outline map consisted of bottom lands which had passed to the plaintiff as a riparian owner upon the recession of Devils Lake. The folder stated that the farm contained "approximately 3,600 acres, of which 320 acres are under cultivation and the balance in hay and pasture." It was further stated: "There are about 600 acres of deeded land and about 3,000 acres of lake bottom or riparian rights, some of this lake bottom being the richest land in the state." The circular further described the live stock, the farm machinery, utensils, etc. In stating the terms of sale the defendant stated in the folder that he had "decided to sell this beautiful farm either with or without the stock and machinery at a very reasonable price and will give a good stockman any reasonable terms and as many years to pay for it as he desires. . . . My price is $20 per acre, including everything, stock, machinery, crops sown and planted, just as it stands at the time of purchase. I need not tell you that this is a bargain and remember, I will make practically any terms of payment wanted." In a circular letter accompanying the folder, the defendant stated: "I will pay a commission of $5,000 upon the above deal, payable when deal is completed. Comb your lists and get this easy money. As I state I will make any reasonable terms of payment."

One of these descriptive circulars came into the hands of one, Fred B. Ingstad, a real estate agent who was at the time employed by the plaintiff. Upon receipt of the folder, Ingstad wrote the defendant suggesting a prospective deal and inquiring as to the acreage as follows: "In regard to the 3,000 acres of lake bottom of riparian rights, suppose you are in a position to give satisfactory papers for this." The defendant, in replying to this portion of the letter, stated: "Relative to the title to the riparian land or receded lake bottom would state that Ralph Ward of Garrison, North Dakota, has just invested several thousand dollars in just such land as I am offering, and I believe that his father-in-law, an attorney by the name of Stevens who lives in Bismarck, is

about the best informed attorney in the state along these matters has passed upon this very same thing. In fact I believe any first class attorney will, after looking the matter up, o. k. the title."

The foregoing correspondence was had on May 20th and prior thereto. On May 26th, Ingstad wrote Hutchinson from Kenneth, Minnesota, to the effect that he had a prospective buyer by the name of Frank Knowlton of Luverne, Minnesota, who was a thorough stockman and who would desire turning in on the deal some lands of his in Rock county, Minnesota. The letter contained considerable of the details of the prospective deal and Hutchinson immediately initiated negotiations with Knowlton. It appears from the subsequent correspondence that Knowlton was not altogether satisfied as to that portion of the land covered by the riparian rights and that Hutchinson was not satisfied to take in all of Knowlton's Minnesota land at the prices stated. In order to take care of this latter difficulty, a conditional contract was suggested by Ingstad, whereby the final consummation of the deal was made to depend upon the parties being able to effect the resale of the Minnesota lands within thirty days so that they would not have to be carried by Hutchinson. Subsequently Ingstad brought Knowlton up to the farm and a conditional contract of the character previously suggested by Ingstad was signed, which was dated June 19th, 1916. In that contract the gross consideration which Hutchinson was to receive and which, of course, embodies the Minnesota lands at Knowlton's figures, was $70,000. Following the execution of this agreement, Ingstad and Hutchinson became active in their efforts to dispose of the Minnesota lands. On July 12th, Hutchinson telegraphed Ingstad who was, at the time, in Luverne, Minnesota, working on the resale of the lands: "If you can get me all cash for Kenneth and south quarters, I will discount each $10 per acre. You can afford to throw off $5 each out of your commission. . . ." On the same day he wrote Ingstad to the same effect, saying: "I would discount the Kenneth and south quarter each $10 per acre. That would be $3,200 providing I got all cash out of them, say $100 down on each quarter, and the balance March 1st. Why can't you also cut $2,500 off your commission. This would still give you and McLean $1,000 apiece and $500 for the other fellow, McDowell, I believe. Seems to me this would be a whole lot better than nothing. . . . Ingstad replied: "Your proposition, although

no doubt well meant, cannot be carried out at this time. I am very sorry you cannot see fit to close up as deal now stands. I am positive that should you make the deal as now stands that you will never have cause to regret it. . . . I do not think, after reading your letter, that it is advisable for me to spend any more time or money on this deal as McLean (one of the principal owners of the Red River Valley Land Company) will surely not stand for it. Hence my departure for Fargo." On July 26th, Ingstad wired Hutchinson as follows: "Knowlton agrees to cut $10 per acre off two quarters, we also to cut our commission. Advise at once what to do." Hutchinson replied: "If you cannot turn land with Knowlton's, yours and my cut, better call deal off." Hutchinson again wired Ingstad on July 31st. (This telegram probably referred to a deal for the resale of the Minnesota lands upon which the Hutchinson sale depended.) "Hold deal. Will be in Luverne August 1st. Wait for me." After more correspondence Hutchinson induced Knowlton and his wife to come to Minnewauken, North Dakota, and while there the final agreement for the sale was made. The purchase price mentioned in the agreement was $64,575, and it appears that the Minnesota lands had not been disposed of as contemplated by the original conditional contract. About the time the sale was made, Hutchinson wrote Ingstad, endeavoring to get him to reduce his commission. The letter was written on the supposition that Ingstad had severed his connection with the Red River Land Company. In his letter Hutchinson, after figuring that the deal would net him about $60,000, said: "This is much less than I ever intended selling it for but I figured that we could arrange now that you have quit McLean that you would receive all the commission so I thought that you would rather have $800 than nothing out of the deal." To this suggestion Ingstad replied: "If you think that McLean and McDowell cannot come in for a claim later I am satisfied with your proposition."

While the foregoing statement gives the facts relative to the transaction as they occurred in chronological order, we think the record justifies the following as a statement of conclusions of fact that must be drawn from the record. The acreage in the defendant's farm was indefinite and the parties dealt with respect to an approximate acreage only. This was due largely to the character of the description and from this fact it follows that the gross price obtained could not be said

to represent a given price per acre. Ingstad was clearly shown to have acted throughout as the agent of the Red River Land Company and during the course of the entire negotiations it does not appear that any final agreement was reached involving any reduction of commission. The defendant continued the negotiations down to the point of making the sale with full knowledge that the agency of the plaintiff had not been abandoned and the defendant never sought to terminate the agency. He did, however, endeavor to persuade Ingstad to reduce commissions by getting McLean and McDowell out of the deal altogether.

In our opinion the foregoing statement of facts is decisive of this case and renders necessary the affirmance of the judgment. Exceptions are taken to the charge given by the court. The court's charge, in substance, is the same as that given in the case of Paulson v. Reeds, 39 N. D. 329, 167 N. W. 371, recently decided by this court. The appellants argue that this decision is also decisive of this case, but this argument does not take into account the clear distinction which exists between the facts in the case of Paulson v. Reeds, and the facts hereinbefore stated. In Paulson v. Reeds, it appeared that there was strong evidence of a change in the commission contract at the time the sale contract was executed, it being understood that the agent was to make up the difference between the sale contract as negotiated and one which would have fulfilled in all respects the listing agreement; whereas, here, there is no evidence that the Red River Valley Land Company ever agreed to cut its commission. The facts are also distinguishable in that in the Paulson v. Reeds Case the parties were dealing with respect to an exact quantity of land at an exact price per acre, while in this case the parties were dealing with an approximate acreage only. In reality the charge in the instant case is different from the charge in the Paulson v. Reeds Case in this respect: That it was stated in this charge that if Hutchinson sold his land to the purchaser found by the plaintiff upon modified terms, "then the plaintiff, *in the absence of any new agreement,* is entitled to the compensation fixed by its original contract."

The appellant also argues that there is a failure of proof in that the plaintiff alleges an agreement to pay a commission of $5,000 upon a sale of the farm upon conditions and terms agreeable to the defendant,

whereas the evidence shows that the agreement was to pay $5,000 upon a sale of the land at $20 per acre. In this connection, the appellant relies upon the case of Grangaard v. Betzina, 33 N. D. 267, 156 N. W. 1035, as controlling. The case at bar is likewise clearly distinguishable from the case of Grangaard v. Betzina, supra, in that the parties in the latter case were dealing upon the basis of a certain price per acre, whereas in the instant case throughout the negotiations it appears that the parties regarded rather the aggregate consideration of the sale, the defendant never stating the minimum net aggregate upon which he would be willing to pay the stipulated commission. Surveying the whole transaction, including Hutchinson's activity in himself pushing the negotiations and the amount of the activity and expense necessarily incident to the co-operation of the plaintiffs in this deal, it is apparent to us that the plaintiffs were at all times engaged in the fulfilment of an agency for the defendant. If the defendant negotiated a deal with the purchaser found by the plaintiff, without taking into account the plaintiff's claim for commissions earned, he has dealt unwisely. If a satisfactory deal, or one netting the defendant approximately the sum which was originally contemplated, could not be consummated with the plaintiff's purchaser, good faith required that the defendant terminate the agency, before undertaking a different deal. There were so many uncertain quantities in this deal from first to last,—terms of sale, acreage, values of exchange properties, etc., that the parties were clearly justified in considering the deal throughout as one and it seems that they did so consider it. The record shows quite conclusively that the defendant Hutchinson considered that he would be under obligation upon consummation of the deal to pay the $5,000 commission; for, as changes were suggested during the pendency of the deal, he endeavored to have the plaintiff, on one occasion, cut its commission in two, thus recognizing that without the change it would be entitled to the full commission upon the consummation of the transaction.

It is further argued that the question of the abandonment of the agency should have been submitted to the jury. There is no evidence in the record that the defendant ever abandoned the agency. There is a suggestion that Ingstad had given Hutchinson the impression that he had quit the defendant company. This, however, would not be evi-

dence that the company had abandoned the transaction, and, in this connection, it should be noted that Ingstad, in reply to the suggestion that he cut his commission, shifted to the defendant the risk of a settlement with McLean and McDowell, who, of course, represented the plaintiff company. This was an absolute recognition by Ingstad, who had actively conducted the negotiations, of the rights of his principal.

Finding no error in the record, the order and judgment appealed from are affirmed.

GRACE, J. I concur in the result.

ROBINSON, J. (dissenting). This is an appeal from a judgment for $5,000 against the defendant for alleged services rendered in regard to the sale of certain land under a special contract. As it appears, for the sale of certain land at the sum of $70,000, the defendant promised to pay $5,000. The plaintiff never produced a purchaser ready or willing to pay $70,000, or any sum in excess of $65,000. Indeed, it was with considerable effort and some expense on the part of defendant himself that he was able to make a sale of the land at $65,000. The contention of plaintiff is that inasmuch as defendant made a deal with the person whom the plaintiff tried to secure as a purchaser and made the sale for a reduced price he, the defendant, became liable to pay a commission of $5,000 in accordance with the terms of the special contract, and the court did, in effect, charge the jury that in case there was an agreement to pay a commission of $5,000 for a sale of $70,000, and a sale at a less sum without any agreement to change the commission and if the plaintiff obtained a purchaser ready and willing to purchase the land upon different terms than first stated, and such modified terms were assented to by the defendant. The plaintiff in the absence of any new agreement is entitled to the compensation fixed by the original contract. That instruction is manifestly erroneous and the court repeated it over and over again so as to impress it on the mind of the jury.

Under such a law if the defendant had sold his property for $5,000 and no more, the plaintiff would be entitled to recover the $5,000 as his commission. Indeed, in case he made any sale whatever, even

for $1,000, or $1, the plaintiff would still be entitled to recover the same $5,000.

And so, if a party should contract to pay $1,000 for the building of a two-story house worth $4,000, and then cause the contractor to make it a one-story house worth $2,000, the carpenter or contractor would still be entitled to a compensation of $1,000 in the absence of a special contract fixing a different compensation, but such is not the law. For the building of a one-story house, the carpenter would have no right to recover on a special contract for the building of a two-story house. For the one-story house his right to recover would be limited to the reasonable value of his services.

And so it is in every case where a party sues to recover on a special contract, *he must prove a substantial compliance with the terms of the contract.* The charge of the court was manifestly wrong and contrary to the decision of the court in Paulson v. Reeds, 39 N. D. 329, 167 N. W. 371.

It furthermore appears that in charging the jury the court read to them the argumentative complaint which might well have been received as a part of the charge of the court. In charging a jury there is no occasion for reading the pleadings of either party, or for repeating the same thing over and over again in different language. The charge should be short and pointed and limited to the issues in the case. A judge seldom gives a charge without overdoing it. There is always a disposition to talk too much.

The judgment should be reversed.


## On Petition for Rehearing.

BIRDZELL, J. In petition for rehearing counsel for the appellant renew the main argument advanced upon the hearing, to the effect that the decision in this case is necessarily controlled by the prior decisions of this court in Grangaard v. Betzina, 33 N. D. 267, 156 N. W. 1035, and Paulson v. Reeds, 39 N. D. 329, 167 N. W. 371. As we interpret the facts, however, this case falls clearly within the widely recognized rule that, where a broker, who is employed at a stipulated commission to sell lands on given terms, finds a purchaser with whom the seller negotiates a sale upon terms and conditions differing from those named

to the agent, the agent will still be entitled to his commission if he is the efficient cause of the sale and if the transaction is consummated while he is still acting as agent, and without any change in the commission. That the authorities generally support and adhere to this rule will be seen by referring to the following citations: 9 C. J. 600–602; 19 Cyc. 249, 250: 1 Clark & S. Agency, § 361; 2 Clark & S. Agency, § 773; note in 34 L.R.A.(N.S.) 1050; Jones v. Adler, 34 Md. 440; Grether v. McCormick, 79 Mo. App. 325; Wetzell v. Wagoner, 41 Mo. App. 509; Jennings v. Overholt, 186 Mo. App. 505, 172 S. W. 449; Duncan v. Turner, 171 Mo. App. 661, 154 S. W. 816; Shober v. Blackford, 46 Mont. 194, 127 Pac. 329; S. E. Crowley Co. v. Myers, 69 N. J. L. 245, 55 Atl. 305.

As we view the prior decisions of this court, referred to by counsel for appellant in his petition, none of them can be said to conflict with the principle above stated. In fact, in Paulson v. Reeds, upon the last two appeals, the rule which, in our judgment, is controlling in the case at bar, was tacitly recognized. See Paulson v. Reeds, 33 N. D. 141, 156 N. W. 1031, and Paulson v. Reeds, 39 N. D. 329, 167 N. W. 371. The reversals were necessary in both appeals for the reason that, under the instructions given, the jury were practically directed to return verdicts for the full amount of the commission claimed, regardless of any change that might have been agreed upon by the parties at the time the sale contract was executed. Upon the last appeal the court was unanimously of the opinion that the jury must be given the right to determine whether or not a change had been effected in the commission agreement. Reference to the dissenting opinion of Mr. Justice Grace will disclose that the only difference of opinion was as to whether or not, under the instructions, the jury could have taken the alleged change into consideration, the majority of the court being of the opinion that it could not, whereas Mr. Justice Grace interpreted the instructions otherwise.

Of the authorities cited in support of the rule, which we regard as decisive of this case, the case of S. E. Crowley Co. v. Myers, 69 N. J. L. 245, 55 Atl. 305, perhaps most aptly illustrates the principle and the distinction, as will be seen in the following paragraphs of the syllabus:

"2. When the authority conferred is to sell at the price of $70,000,

the owner may decline to accept a proposing purchaser whose offer is to buy the lands at the price fixed to be paid, not all in cash, but in part by the conveyance to the seller of other lands at the price of $30,000. But if the owner accepts such an offer, the agent is entitled to his commissions.

"3. If the owner, upon receiving such an offer, accepts it on an agreement with the agent that he shall not be entitled to or receive commissions upon the price at which the lands are taken in exchange until the agent has procured a satisfactory purchaser for such lands, and the agent has failed to do so, a defense available in an action for commissions is disclosed upon a proof of the agent's failure. Whether the acceptance of the owner was upon such a condition, if contested, presents a mere question of fact."

In the case at bar, there was no evidence that there was any agreement reached, involving a change in the commissions, and in this respect the case differs both from Paulson v. Reeds and S. E. Crowley Co. v. Myers, supra. But it comes directly within the principle supported by all the authorities above cited.

The petition for rehearing is denied.