P. B. NEFF and Edward Bailey, Respondents, v. WILLIAM H. SCHRADER, Appellant.

(191 N. W. 466.)

**Brokers — brokers entitled to commission when producing under contract buyer ready, willing, and able to purchase.**

1. A broker who, pursuant to his contract of employment has produced a purchaser ready, willing, and able to purchase the land of his principal, upon terms satisfactory to such principal, is entitled to his commission.

**Brokers — brokers producing purchaser with whom principal made valid contract of sale entitled to commission, though contract thereafter canceled by mutual agreement.**

2. Where brokers produced such purchaser with whom the principal made a valid contract for the sale of his land and agreed with his brokers concerning the amount of the commission to be paid, and where, thereafter, such principal and the purchaser, by mutual agreement, without notice to, or the consent of, the brokers, canceled the contract, the principal retaining the initial payment made upon the contract, it is held, for reasons stated in the opinion, that the brokers are entitled to their commission.

Opinion filed November 22, 1922.

Brokers, 9 C. J. § 87 p. 596 n. 33; § 91 p. 605 n. 78.

---

Note.—The settled rule as stated by the courts is that, in the absence of an express contract between the broker and his principal, the implication generally is that the broker becomes entitled to his commissions whenever he brings to his principal who is able and willing to take the property and enter into a valid contract upon the terms named by the principal, as will be seen by an examination of the cases discussed in a note in 44 L.R.A. 593, et seq.; 4 R. C. L. 303; 1 R. C. L. Supp. 1112; 4 R. C. L. Supp. 261; 5 R. C. L. Supp. 236.

On the question as to when a real estate broker has earned his commissions, see note in 139 Am. St. Rep. 225.

Action for broker's commission in District Court, **Dickey County,** *McKenna,* J.

Defendant has appealed from an order granting judgment non ob- stante and from the judgment so entered thereupon.

Affirmed.

*F. J. Graham,* for appellant.

If no motion for a direct verdict has been made, or if the motion for a directed verdict was properly denied, then a motion for judg- ment notwithstanding the verdict should not be granted.   See Johns v. Ruff, 12 N. D. 74, 95 N. W. 440; West v. Northern P. R. Co. 13 N. D. 221, 231, 100 N. W. 254, 33 N. D. 36.

"If the right to a commission is dependent on payment of the price by the purchaser, the broker must show payment." (Burnett v. Edling, Texas, 48 S. W. 775), or tender (Fiske v. Soule (Cal.) 25 Pac. 430; 19 Cyc. 270).

Hinds v. Henry, 36 N. J. L. 328, holding that a broker may, by special agreement with his principal, so contract as to make his com- pensation dependent upon a contingency which his efforts cannot con- trol, even though it relates to the acts of his principal, as upon the event of the purchaser's making a certain payment at a given time. Lyle v. University Land, etc., Co. (Tex.) 30 S. W. 723; McPhail v. Buell (Cal.) 25 Pac. 266; Lassen v. Bayliss, 125 Fed. 744.

A real estate broker who has undertaken the sale of property is not entitled to recover his commissions where the person procured as a purchaser after signing a written contract of purchase and paying part of the consideration in cash declares his total inability to perform the contract, which is thereupon canceled.   See Melvin v. Aldrich (Md.) 32 Atl. 389; Smith v. Sheil, 28 Pac. 857; Martinson v. Hensler (Minn.) 157 N. W. 714.

*W. S. Wickersham,* for respondents.

"The contract of the broker is to negotiate a sale, that is, to pro- cure a valid contract of purchase, which can be enforced by the vendor if his title is perfect; or, if he does not procure such contract, to bring the vendor and proposed purchaser together that the vendor may se- cure such contract."   Baars v. Hyland (Minn.) 67 N. W. 1148.

The same rule is laid down in the following cases:  Darrow v. Har- low, 21 Wis. 302; Brosse v. Cooley (Minn.) 45 N. W. 15; Cain v.

Nasurette. (Mich.) 162 N. W. 287; Fuday v. Gill (Mich.) 161 N. W. 900; 19 Cyc. 242, 900; 9 C. J. 591; Wood v. McQueen, 13 N. D. 153; Paulson v. Reed, 33 N. D. 141; Gross v. Stevens, 21 N. W. 549; Flynn v. Jordal, 100 N. W. 236; Nagl v. Small, 138 N. W. 849; Leigh v. Slean, 188 N. W. 836.

In spite of some authorities to the contrary, we are convinced that in such a contract as is here pleaded the broker is entitled to his commission when through his instrumentality the purchaser has been produced, is able and willing to buy, and with whom the owner actually makes an enforceable contract of sale, even though the contract fails in the performance through default of the purchaser. The same rule is laid down in the following cases: Huntermer v. Arnt, 93 N. W. 653; Lund v. Rapp, 127 N. W. 548; Rowe v. Gage, 112 N. W. 469; Micek v. Waneka, 161 N. W. 367.

## Statement.

BRONSON, J. Plaintiffs seek to recover from defendant $565 as a brokerage commission. The complaint alleges that defendant listed with plaintiffs, in 1919, his land, consisting of 144 acres, for sale at $90 per acre net to defendant, upon the agreement that plaintiffs should receive, as profits in making the sale, all in excess of $90 per acre for which said land might be sold; that, pursuant to such agreement, plaintiffs procured a financially responsible purchaser to whom defendant sold his farm at $100 per acre; that a written contract for a deed was made with the purchaser and possession of the farm delivered to Mayden by defendant; that, pursuant to a trade whereby property located in Denver was taken in exchange, plaintiffs allowed a discount from their commission of $575. That defendant paid to plaintiffs $300, and there is a balance of $565 due. Defendant, in his answer, alleges that such land was listed with plaintiffs at the stipulated price of $90 per acre net to him, with the agreement that plaintiffs should receive, as profits for making the sale, all in excess of $90 per acre, when the land was fully paid for and a deed given for land to the purchaser; that, pursuant to such agreement, plaintiff secured one Mayden to make a contract with defendant for the purchase of the land for $14,400; that the purchaser paid $950 in cash

and argeed to pay $2,000 on Nov. 1st, 1919, whereupon a deed should issue; that, after the contract had been signed, plaintiffs and defendant agreed that the amount due plaintiffs for commission was $565, to be paid to them out of the $2,000 payment to be made by the purchaser on Nov. 1st, 1919, and in no other way; that, pursuant thereto, defendant made out an order directing the First National Bank of Oakes, North Dakota, to pay plaintiffs $565 whenever such purchaser should make payment of the $2,000 due Nov. 1st, 1919; that the purchaser took possession of the land about Sept. 1st, 1919, and threw it up Oct. 1st, 1919; that he has never made payment of the $2,000; that defendant has at all times been ready, willing, and able to go ahead and fulfil the terms of the contract and that the purchaser refuses and neglects so to do.

In the evidence the following facts appear: Defendant resided on his farm of 144 acres in Dickey county. He listed the farm for sale with plaintiffs at a stipulated price of $90 net to him, with the agreement that plaintiffs should receive, as commission upon a sale, the price in excess thereof. Plaintiffs brought a purchaser, one Mayden, to defendant's farm. Through negotiations had, defendant went to Denver, Colorado, there to inspect Mayden's house and lot, proposed to be traded as part of the purchase price for his farm. Upon the return of the parties to Nebraska, a contract dated July 14th, 1919, was made between the parties whereby defendant agreed to convey his farm to Mayden for a consideration of $14,400 to be paid as follows: $950 in cash; $2,000 cash on Nov. 1st, 1919; $1,200 due July 25th, 1920; and $7,000 through Mayden's note and mortgage upon the land due Nov. 1st, 1924. Further, Mayden agreed to give in payment his Denver property, valued at $5,000, subject to a mortgage for $1,750, which defendant assumed and agreed to pay. The contract provided for the execution and delivery of warranty deeds, the furnishing of abstracts showing good and sufficient title, and the transfer of possession of both properties on Nov. 1st, 1919, at which time settlement would be made in accordance with the contract.

In the sale of the Denver property as part of the purchase price for defendant's farm, it was agreed between plaintiffs and defendant that $500 should be deducted from their commission and also $75, one half of defendant's expenses upon the trip of inspection to Denver. Im-

mediately Mayden paid to defendant $950, pursuant to the contract. On July 16th, 1919, defendant, after his return home, wrote plaintiff Neff in part, as follows:

"Now, Mr. Neff, as your commission between you would come to $865 I have not seen Mr. Bailey as yet. I promised him that I would give him $300 if he made the deal. Now I'll give the figures which I hope will be correct. The full commission would be $1,440 deducting as you agreed $500, also half of my expenses going and returning from Denver I figured up all my expenses which was $150 and half of that would be $75. That would leave you and Mr. Bailey $865. And if Mr. Bailey demands the $300 what will I do about it? So I will keep out that amount and you had better come up here and settle between yourselves. So I will inclose draft for $300 as I think it would be fair that you fellows would wait for the balance until Nov. 1st, when we make full settlement, but, you come up and I'll make it satisfactory with you."

Shortly afterwards, defendant sold to Mayden his personal property upon the farm. Mayden's son came and took possession of the farm and for a short time, apparently, lived with the defendant on this farm. Then, on Sept. 9th, 1919, defendant moved to Denver. Prior to this time, in August 1919, defendant saw Neff. Defendant gave an order for the commission due plaintiffs and left the same at a local bank. In the testimony there is a dispute concerning the contents of this order. Defendant testified that the order directed the bank to pay plaintiffs $565 when Mayden paid the $2,000 and complied with the contract. Plaintiffs testified that the order directed the bank to pay them $565 on Nov. 1st. 1919. The order was lost. Before defendant left for Denver he deposited with the bank a warranty deed for his land signed by himself and his wife, also a blank mortgage for $7,000 to be signed by Mayden. Defendant Neff said there was some complaint about the title to his land but he had it straightened out in about sixty days' time. At Denver, the tenant in possession of the Denver property paid defendant one month's rent, $30. Defendant, however, testifies that he never received nor took possession of the property. In April 1920, defendant returned.

Some dispute had arisen between Mayden and defendant concerning defendant's representations as to whether his land was subject to flood-

ing.   Mayden had refused to make further payments.   In May or June, 1920, Mayden and defendant agreed to cancel their contract. This was done without notice to, or the consent of, the plaintiffs.   Pursuant to their agreement, defendant retained the $950 paid by Mayden and received the return of his land.   Mayden received the $30 rent paid to defendant and the return of the Denver property.   On Oct. 1921, this action was instituted.   The trial court submitted the issues to the jury who returned a verdict in favor of the defendant. Thereafter, upon motion for judgment notwithstanding the verdict the trial court granted such motion and, pursuant thereto, judgment was entered in plaintiff's favor for $565 commission and interest. Defendant has appealed from the order granting judgment non obstante and from the judgment entered thereupon.

In an extensive and able memorandum opinion the trial court has found, as a matter of law, that the evidence disclosed that plaintiffs had fully completed their contract and had earned their commission; that defendant entered into a valid and binding written agreement with Mayden, who, from the evidence disclosed, was financially able, ready, and able to respond and in recognition of such valid agreement the defendant voluntarily made a contract to cancel such contract with the purchaser and to retain the profits accrued under such contract.

## Opinion.

I am of the opinion that the trial court did not err in granting the motion for judgment non obstante.   Laws 1921, chap. 133.   This court has frequently recognized the principle that a broker who, pursuant to the contract of employment, has produced a purchaser ready, willing, and able to purchase the land of his principal upon terms satisfactory to his principal is entitled to his commission.   Koffel v. Rhud, ante 194, 191 N. W. 464; Paulson v. Reeds, 33 N. D. 141, 151, 156 N. W. 1031; Harris v. Van Vranken, 32 N. D. 238, 155 N. W. 65; Paulson v. Reeds, 39 N. D. 329, 167 N. W. 371; Id. 48 N. D. 90, 183 N. W. 641; Ball v. Dolan, 18 S. D. 558, 562, 101 N. W. 719; Lund v. Bapp, 25 S. D. 439, 127 N. W. 548; Tilden v. Smith, 24 S. D. 576, 124 N. W. 841.   Through defendant's admissions, it

appears that a purchaser was produced for defendant's land upon terms satisfactory to defendant. A valid, binding contract was made between the parties. Defendant recognized and acted under this contract. He delivered his farm to Mayden. He received rent from the Denver property.

No question is raised concerning Mayden's financial responsibility and ability to perform the contract. Through mutual dealings, between Mayden and defendant, subsequent to this valid contract, apparently, in part, because of defendant's title and his representations concerning his land, this contract was canceled without notice to, or the consent of, the plaintiffs. Defendant retained the initial payment of $950 cash paid by Mayden upon the contract. Plaintiffs are clearly entitled to their commission. Upon the issues plaintiffs established their cause of action; defendant's defense failed. Even though it be conceded that plaintiffs agreed, pursuant to the order, to accept their commission when Mayden paid the $2,000 due Nov. 1st 1919, and that such agreement was valid, nevertheless, the settlement made between the parties which recognized the contract and, then terminated it by a new agreement, also recognized plaintiffs' right to their commission pursuant to the terms of such contract. Defendant, by his own act, waived his right to collect from Mayden $2,000 and waived the right, if any there were, to compel plaintiffs to wait for their commission until such payment was made. 9 C. J. 605; Smith v. Eelis, 191 Iowa, 1307, 184 N. W. 385; Red River Valley Co. v. Hutchinson, 41 N. D. 193, 170 N. W. 317.

BIRDZELL, Ch. J., and CHRISTIANSON and GRACE, JJ., concur.

ROBINSON, J. (dissenting). This is an action to recover from defendant $565 as a balance due on a commission for an abortive sale of 144 acres of land in Dickey county. The land is about twenty miles east of Ellendale and is adjacent to the James river. In the summer of 1919 the land in question was owned and occupied by defendant and he listed it with the plaintiffs for sale at $90 an acre net to him. One of the plaintiffs lived in Nebraska and not far from the home of one Mayden, to whom he tried to sell the land at $100 an acre. May-

den went north, saw the land and agreed to take it at $100 **an acre**
on condition that defendant take from him a lot in Denver, Colorado,
at $5,000. The bargain was concluded and Mayden paid earnest
money, $950, from which $300 was paid on the commission. To pro-
mote the sale the plaintiffs agreed to reduce their commission $575.
The contract was that on November 1, 1919, Mayden should pay de-
fendant, at the First National Bank of Oakes, $2,000, and give de-
fendant a mortgage on the land for $7,000 and convey to him the
$5,000 property in Denver. Conveyances were made in escrow, but
they were never delivered because that Mayden repudiated the contract
and refused to perform it. With the escrow papers there was given an
order to the bank to pay the plaintiffs from said $2,000, the commis-
sion of $565. That order was lost and it seems the main dispute was
on the form or wording of the order. Soon after making the pre-
liminary contract it seems Mayden discovered that the land was sub-
ject to overflow from the James river. He claimed that he was de-
ceived and claimed damages, and that was the cause given for his re-
fusing to perform the contract. He was not responsible. There was
no evidence that he had any property in this state; no evidence show-
ing that he had any property elsewhere, or that it was in any way
feasible for the defendant to enforce the contract. Hence, the defend-
ant wisely concluded to abandon and cancel the contract. The tes-
timony of the defendant is that the plaintiffs never demanded the
commission or spoke to him concerning any commission till a year and
a half afterwards; that then Mr. Neff, one of the plaintiffs, came to
him smiling and said that he had never received that commission, and
defendant made answer that he had never received the $90 an acre
for the land.

Concerning the order for the payment of $565 on commission, the
plaintiffs testify that the order was absolute and unconditional. The
defendant and one disinterested witness testified to the contrary and
testified that the order was for payment of the commission out of the
$2,000. On that question the testimony of the defendant and his wit-
ness is positive, circumstantial, and convincing. The jury believed
the defendant and had a right to believe him; but the trial court took
the position that when the preliminary contract was made the com-
mission had been earned and that there was no consideration for any

conditional contract in regard to the payment of the commission. But as the evidence shows beyond question, the plaintiffs never produced a purchaser ready, able, and willing to buy the land at $90 an acre. The preliminary sale contract proved abortive and it was abandoned and repudiated. The defendant had no means of enforcing it. He was under no obligation to expend good money by an uncertain suit in Nebraska to enforce such a contract. The verdict of the jury was right and conscionable. The judgment and order contrary to the verdict should be reversed.