WILBUR F. AMIES et al., Respondents, *v.* JOHN WESNOFSKE et al., Appellants.

(Argued November 18, 1930; decided January 6, 1931.)

*Charles I. Wood* and *Harry W. Moore* for appellants. The meaning and intent of the agreement between the parties as to the amount and payment of commissions was a question for the jury properly left to and determined by them. (*Reis Co.* v. *Zimmerli*, 224 N. Y. 351; *Farrell* v. *Massapequa Holding Corp.*, 222 App. Div. 815; *Eaton* v. *Canniff*, 228 App. Div. 757; *North Sea Developments, Inc.*, v. *Burnett*, 228 App. Div. 244; *Coughlan* v. *Frankel*, 216 App. Div. 565; *Morgan* v. *Calvert*, 126 App. Div. 327; *Levy* v. *Forster*, 224 App. Div. 463; *Colvin* v. *Post Mortgage & Land Co.*, 225 N. Y. 510; *Blevin* v. *Lighthouse*, 231 N. Y. 64; *MacDowell-Peterman Co.* v. *Independent P. Co.*, 211 App. Div. 781; *Caldwell Co.* v. *Connecticut Mills Co.*, 225 App. Div. 270; 251 N. Y. 565; *Lougheed Co.* v. *Suzuki*, 216 App. Div. 487; 243 N. Y. 648; *Larson* v. *Burroughs*, 131 App. Div. 877; *Mann* v. *Gobel*, 221 App. Div. 775; *Seymour* v. *St. Luke's Hospital*, 28 App. Div. 119; *Condict* v. *Cowdrey*, 139 N. Y. 273; *Weiner* v. *Infeld*, 116 Misc. Rep. 323; *Windsor Investing Corp.* v. *McLaughlin's Sons*, 130 Misc. Rep. 730; 224 App. Div. 715.)

*Henry Vollmer, Jr.*, and *George C. Wildermuth* for respondents. The trial court should have directed a verdict for the plaintiffs. (*Reis Co.* v. *Zimmerli*, 224

N. Y. 351; *Fieck* v. *McKenna*, 115 App. Div. 701; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Gilder* v. *Davis*, 137 N. Y. 504; *Collyer & Co.* v. *Moulton*, 9 R. I. 90; *Benedict* v. *Pincus*, 134 App. Div. 555; *Kellogg* v. *Olmsted*, 25 N. Y. 189.) The contract entered into between the plaintiffs and defendants, if valid, merely fixes a time when the contract was to be performed and does not make a condition precedent to the plaintiffs' rights to their commissions, and as a matter of law referred to the time when the commission which had been earned by the plaintiffs should be paid to them. (*Colvin* v. *Post Mortgage & Land Co.*, 225 N. Y. 510; *Seymour* v. *St. Luke's Hospital*, 28 App. Div. 119; *Larson* v. *Burroughs*, 131 App. Div. 877; *Levy* v. *Forster*, 224 App. Div. 465; *Morgan* v. *Calvert*, 126 App. Div. 327; *North Sea Developments, Inc.*, v. *Burnett*, 228 App. Div. 449; *Coughlan & Co.* v. *Frankel*, 216 App. Div. 565.) The voluntary releasing of the vendee by the vendor from his contract, which contract might have been enforced, does not preclude the broker from the recovery of his commissions. (*Zittel & Sons* v. *Schwartz*, 192 App. Div. 353; *Nuer* v. *Jaffe*, 179 App. Div. 37; *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Phillips* v. *Kraft*, 136 App. Div. 859; *McQuillan* v. *Carpenter*, 72 App. Div. 595; *Pullich* v. *Casey*, 43 App. Div. 122; *Corbin* v. *Mechanics & Traders Bank*, 121 App. Div. 744; *Alt* v. *Doscher*, 102 App. Div. 344; *Slocum* v. *Ostrander*, 141 App. Div. 380; 205 N. Y. 617; *Gilder* v. *Davis*, 137 N. Y. 506.)

KELLOGG, J. The defendants, on December 9th, 1925, entered into a written contract with Harry F. de Riesthal and Charles E. Crawford, whereby the former agreed to sell to the latter certain real estate at a named price per acre, totaling approximately $124,000 for the entire acreage. The sum of $10,000 was presently paid; $30,000 was made payable on April 9th, 1926, when the deed was to be delivered; the balance was to be paid by the execu-

tion and delivery of a purchase-money mortgage. The plaintiffs, Amies and Stephen J. Hines, whose estate is represented by the plaintiff J. Emma Hines, were a brokerage firm, doing business as Amies & Hines. They introduced de Riesthal and Crawford to the defendants, by whom they were accepted as purchasers ready, willing and able to buy. Simultaneously with the execution of the contract of sale, the defendants executed and delivered to Amies & Hines a writing recognizing the employment of the partners as their agents. The writing stated that " we agree to pay for their services in bringing about such sale the sum of Five Thousand ($5,000) Dollars, one-half of which is paid this date and the balance to be paid on the closing of title." The closing of title was adjourned from April 9th to June 1st, 1926, when de Riesthal and Crawford, for lack of funds, declined to complete the purchase. Accordingly, it was agreed between the buyers and the sellers that the sellers might retain the $10,000 already paid, and that the obligations of the contract should otherwise cease. In this action a recovery of $2,500, the balance of the commissions remaining unpaid, is sought.

Self-evidently the writing delivered to Amies & Hines does not integrate the original contract of employment made by them with the defendants; nor is it an exclusive memorial of the defendants' promises originally made. The defendants " recognize " Amies & Hines " as the agents who brought about the sale of our farm to de Riesthal and Crawford, with whom a contract is entered into this day." Here is an acknowledgment of a prior employment of Amies & Hines to render services now already performed; not a memorandum of a contract yet to be performed. Nor can the writing bind the brokers, who accepted it, as the integration of a new contract entered into on the day of its making. The brokers, having already performed the services they had under-taken, were presently possessed of a chose in action

entitling them to recover commissions according to the express or implied terms of an agreement precedently made. Therefore, a new agreement, involving a surrender of the chose in action and the substitution of a promise to pay upon new terms, without consideration paid, would have been unenforcible. (*Reis Co.* v. *Zimmerli*, 224 N. Y. 351.) Not being conclusive upon the plaintiffs, as an exclusive memorial of the original contract, or as an embodiment of the terms of an enforcible contract newly made, the writing, as to the defendants, was likewise inconclusive. It may have been intended to have force as a written admission of the defendants' original promise. Also, the acceptance of the writing by the brokers may have constituted an admission by them that the writing correctly stated the terms of the original contract of employment. However, regarded as admissions, neither the writing nor its acceptance conclusively bound the parties to the action. For these reasons, resort to parol proof was reasonable and necessary, in order that the terms of the original contract of employment might be determined.

Proof was given by the plaintiffs that the defendants, at the time when the contract of employment was made, unconditionally promised to pay the brokers the sum of $5,000 as their commissions for procuring a sale. Proof was given by the defendants that, at the very moment of employment, the defendants agreed to pay and the brokers agreed to accept the sum of $5,000, " half on the contract and half on the closing of the deal," as stated by the defendant Johanna Wesnofske; " twenty-five hundred to get when we draw the contract and the other half they get when they close the deal, after the deal is closed," as stated by the defendant John Wesnofske. The testimony of the defendants is in precise accord with the writing delivered to the brokers whereby the defendants admitted an obligation to pay one-half of the commissions " on the closing of title." The trial judge

charged the jury that the plaintiffs might recover if the defendants unconditionally promised to pay the sum of $5,000 for commissions; that they might not recover if the defendants promised to pay $2,500 on the signing of the contract, and "the other half of it when the title was closed." The jury, in reporting a verdict for the defendants, necessarily found that the agreement, as stated by them, was the agreement entered into. As the Appellate Division reversed on the law only, we must assume it to have been the established fact that the defendants promised to pay the balance of the commissions, or $2,500, "on the closing of title," and not otherwise. The first question to be decided is whether or not this was a promise to pay upon a condition which has not been fulfilled; the second, whether or not the fulfillment of the condition, assuming that the promise was conditional, has been waived.

The employment of such words as "when," "after," or "as soon as," clearly indicate that a promise is not to be performed except upon a condition. (Williston on Contracts, vol. 2, § 671.) Promises to pay broker's commissions, for the procurement of sales of real estate, are conditional when expressed to be performable "on the day of passing title" (*Leschziner* v. *Bauman*, 83 N. J. L. 743); "when the sale is completed" (*Sams* v. *Olympia Holding Co.*, 153 Wash. 254); "upon delivery of the deed and payment of the consideration" (*Tarbell* v. *Bomes*, 48 R. I. 86); "at settlement" of the total consideration (*Simon* v. *Myers*, 284 Penn. St. 3); "when the sale is consummated" (*Alison* v. *Chapman*, 36 Cal. App. 759); "at the date of passing title" (*Baum* v. *Goldblatt*, 81 Penn. Sup. Ct. 233); "at the time of the consummation" of the sale (*Morse* v. *Conley*, 83 N. J. L. 416); if the "deal is completed" (*Pratt* v. *Irwin*, 189 S. W. Rep. 398 [Mo.]); "if the deal now pending" is consummated (*Goodwin* v. *Siemen*, 106 Minn. 368); "only when the seller" has "received her full purchase price" (*Norris* v. *Walsh*, 71 Col. 185).

In *Alder* v. *Boyle* (4 Mann. G. & S. 635) the agreement was to pay an agent, for the procurement of an exchange of advowsons, the sum of £100, " one-third down, the remaining two-thirds when the abstract of conveyance is drawn out." The third party failed to deliver his abstract to the defendant and the exchange fell through. It was held that commissions were not recoverable, WILDE, C. J., saying: " It appears to me to be perfectly plain, that the money was to be paid only upon the happening of an event that has not occurred." It has been suggested that a promise to pay " when " a named event happens, or " upon " the happening of the event, may be differentiated from a promise to pay ". if " the event happens; that the promise to pay is absolute, and the words " when " or " upon " refer only to the time of performance. Certainly, whether the one construction or the other be correct, the result must be the same; since, if the event does not befall, or a time coincident with the happening of the event does not arrive, in neither case may performance be exacted. Nor will it do to say that a promise to pay " on the closing of title " is a promise to pay on the date fixed by the contract of sale for the closing of title. No such thought is expressed by the words. It is the event itself, not the date fixed for its happening, which makes the promise to pay performable. We think that reason and authority compel the conclusion that we have here a promise to pay a broker upon a condition which has not been fulfilled.

The question remains whether the condition qualifying the promise, that it should become performable only upon " the closing of title," has remained unfulfilled, because of any fault upon the part of the defendants. If a promisor himself 'is the cause of the failure of performance of a condition upon which his own liability depends, he cannot take advantage of the failure. (Williston on Contracts, vol. 2, § 677; *Dolan* v. *Rodgers*, 149 N. Y. 489; *Matter of Casualty Co.* [*Bliss Co. Claim*], 250 N. Y. 410, 419.) " It

is a well-settled and salutary rule that a party cannot insist upon a condition precedent, when its non-performance has been caused by himself." (*Young* v. *Hunter*, 6 N. Y. 203.) " It is as effective an excuse of performance of a condition that the promisor has hindered performance as that he has actually prevented it." (Williston on Contracts, vol. 2, § 677.) The American Law Institute, in its " Restatement of the Law of Contracts " (Tentative Draft No. 6, § 289), under the heading " Excuse of Condition by Prevention or Hindrance," says: " If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused, and the actual or threatened non-performance of the return promise does not discharge the promisor's duty." The doctrine is purely one of waiver; active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute. No such doctrine can be efficacious to compel positive action by the promisor to bring about the performance of the condition. For that result the implication of a promise would be requisite. The vendor of property makes no contract with his broker to procure from the vendee the performance of a contract of sale. (*Fox Co.* v. *Wohl*, 255 N. Y. 268.) The situation justifies no implication to that end, for the broker, in placing reliance upon the self-interest of the vendor in procuring performance from the vendee, is ordinarily secure. On principle, then, the duty of a vendor to his broker is fulfilled if he remain passive and neutral; the condition, upon which the payment of commissions is made to depend, is waived only where the vendor is active to prevent or hinder its performance. The principle has been applied in many jurisdictions.

It has been very generally held that a vendor is under

no duty to his broker to enforce specific performance by the vendee, when commissions are conditioned upon performance; that the vendor may accept forfeiture by the vendee, retain the down payment made, and not become liable thereby to pay his broker. (*Ash* v. *Oppman*, 199 Ill. App. 573; *Sams* v. *Olympia Holding Co.*, *supra; McPhail* v. *Buell*, 87 Cal. 115; *Dunne* v. *Colomb*, 192 Cal. 740; *Laird* v. *Elliott*, 219 S. W. Rep. 499 [Tex.]; *Norris* v. *Walsh, supra; Simon* v. *Myers, supra; Seymour* v. *St. Luke's Hospital*, 28 App. Div. 119.) The decisions in *Haber* v. *Goldberg* (92 N. J. L. 367) and *Dermody* v. *New Jersey Realties, Inc.* (101 N. J. L. 334) are not necessarily at variance with the decisions cited. In the first case, the vendor sued the vendee and obtained damages for non-performance. In the second case, the vendor was not content to accept a forfeiture; in addition to retaining the down payment made, he exacted and received, upon a settlement, a substantial sum in lieu of damages. In each case, the vendor made use of the contract, secured for him by his broker, to obtain an advantage from the defaulting vendee. Although he did not secure actual performance of the contract, he received, in the one case, an award representing the benefit lost; in the other, an agreed payment which presumably measured it with approximate accuracy. It might well have been reasoned that the precise equivalent of performance was received in each case; therefore, that the condition had in effect been performed. However that may be, the two cases do not derogate from the principle that to establish a waiver by a vendor of a condition of payment of commissions to his broker, viz., that an actual sale be consummated, there must be a positive act by the vendor hindering or preventing performance.

In this instance, on the day fixed for the closing of title, as postponed by mutual agreement, the vendees declined to proceed with performance. The forfeiture, unequivocally declared by the vendees, was accepted by

the vendors. True, the parties entered into a new agreement whereby the vendors were to retain the $10,000 previously paid and the vendees were to be released from their contract obligations. However, the vendors received from the agreement no right or thing which the law had not already given them, viz., the sum of $10,000 and the right to retain it. The defendants, therefore, neither prevented nor hindered performance. Non-performance was already, without their aid, an established fact. Passive acquiescence in a declared·default and its consequences was not an act of prevention or hindrance. Neither did the defendants receive an additional advantage, bargained for in lieu of non-performance. Consequently a case of waiver was not made out. The condition upon which payment was made to depend, not having been performed or waived, no recovery may be had.

The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed, with costs in the Appellate Division and in this court.

CRANE, J. (dissenting). The defendants were the owners of seventy acres of farm land situated at Hicksville, Long Island, which they sold to de Riesthal and Crawford for $124,000, of which $40,000 was to be paid in cash, and the rest secured by bond and mortgage. Amies & Hines were the real estate brokers putting through the deal, for which the usual commission of five per cent would have been $6,200. After some bickering, the brokers agreed to take $5,000 " as a flat commission." When the contract was signed and executed, the brokers took $2,500 in part payment, and agreed to wait for the balance until title was closed. The defendants, at the time of executing the contract with the purchaser, also signed the following memorandum:

" We, the undersigned, do hereby recognize Amies & Hines, ·of 163–18 Jamaica Avenue, Jamaica, N. Y., as the

agents who brought about the sale of our farm to de Riesthal and Crawford, with whom a contract is entered into this day, and we agree to pay for their services in bringing about such sale the sum of Five thousand ($5,000) Dollars, one-half of which is paid this date and the balance to be paid on the closing of title."

The purchasers procured adjournments from time to time, and finally entered into an agreement with the defendant owners to be relieved of their contract. One of the purchasers, de Riesthal, testified that although they were financially able to carry out the contract, they did not have the available cash to meet the required payment. He said that they had sufficient property at that time, but not sufficient cash, yet they did not want to be sued for specific performance. Under these circumstances, the defendants agreed, through their lawyer, to take $10,000 as liquidated damages, keep their property, and exchange releases with the purchasers. The release is in evidence and is mutual, signed by all parties. The purchaser releases the seller, and the seller terminates the contract. The brokers knew nothing about this release and were not consulted.

What liquidated damages did the defendants, sellers, suffer? Through the efforts of the brokers, they have received $10,000 cash in settlement of something. Did this include the commission to be paid to their brokers, or did it represent their profit on the transaction? Whatever it is, the defendants by a formal written agreement have substituted one contract for another, and in place of giving a deed and taking mortgages, have kept their property and taken cash. Under these circumstances, are the brokers entitled to their commission?

Brokerage to be paid on the closing of title does not as a matter of law create a condition precedent. Whether it merely fixes the time of payment of a sum admittedly due, or whether the commission is dependent upon the pass-

ing of title is generally a question of fact. (*North Sea Developments, Inc.*, v. *Burnett*, 254 N. Y. 374.) Ordinarily, a broker is entitled to his commission when the parties have agreed upon terms and executed the contract of sale. His work is then done, and he is entitled to his pay. If the parties agree otherwise, it is an exception to this general rule. The fact that a purchaser may fail or refuse to carry out his contract is a risk which ordinarily the seller, and not the broker, assumes. The law furnishes protection to the seller, even beyond that which is ordinarily furnished vendors of securities or other personal property. (*Colvin* v. *Post Mortgage & Land Co.*, 225 N. Y. 510.) The assertion, therefore, that the postponement of the payment of an earned commission to the closing of title creates as a matter of law a condition precedent does not receive my acceptance. It is a question of fact, not a question of law, and was such in this case.

Passing this point, however, and assuming that the commission was not to be paid unless title closed, the action of the defendants estops them from making such a claim. They have received the benefit of the broker's services. Through his efforts they keep their property and $10,000 in cash, which they asserted paid all their damage. This sum was accepted as liquidated damages and the contract of sale canceled. Damages would ordinarily include the broker's commission, and there is nothing in this case to indicate that the $10,000 was not accepted with this in view. There is no evidence that the property was worth more or less than the purchasers agreed to pay for it, or to indicate what damages the defendants suffered. We must, therefore, assume that it included the one element we do know constituted a liability, to wit, the broker's commission. As before stated, the purchaser was not insolvent, but financially responsible; specific performance was to be avoided, and by the exchange of mutual releases the contract of purchase was canceled. The sellers participated in

terminating the contract, and cannot now claim that the brokers did not earn their commission. The principle involved is clearly apparent when we change the incidents of the transaction and assume that the seller agreed with the purchaser to keep his property and accept $100,000 profit. Under such circumstances no one would insist that the broker lost his commission because title did not close. (*Morgan* v. *Calvert*, 126 App. Div. 327; *Coughlan & Co., Inc.,* v. *Frankel,* 216 App. Div. 565; *Haber* v. *Goldberg,* 92 N. J. L. 367; *Neff* v. *Schrader,* 49 N. D. 213; *Myers* v. *Buell,* 142 Ill. App. 467.) In *Dermody* v. *New Jersey Realties, Inc.* (101 N. J. L. 334) it is said: " Where a real estate agent produces a purchaser able to buy, who is accepted by the vendor, with whom he enters into a contract, but afterwards defaults and settles with the vendor by the payment of a sum of money as damages for his breach of the contract, the agent's commission under his contract with the vendor is earned, notwithstanding it was stipulated to be paid at the time of passing title, which did not pass, because the contract of settlement substitutes payment of damages to the vendor, in the place of the purchase-money stipulated in the contract of sale and purchase, which contract was brought about by the agent's services." (See, also, *Pinkerton* v. *Hudson,* 87 Ark. 506; *Tarbell* v. *Bomes,* 48 R. I. 86.)

At least it would be a question of fact whether the settlement with the purchaser was to the advantage and profit of the defendants or whether the purchaser being unable to perform, the defendants in good faith merely accepted payment of the damage they had sustained. (*Boysen* v. *Frink,* 80 Ark. 254.)

As to the record before us and the exceptions which raise these various points of law: The Appellate Division reversed as a matter of law and directed judgment for the plaintiff upon the theory that the words of the brokerage contract merely postponed time of payment and did

not create a condition precedent. We are agreed, I think, that these words at least, for the circumstances of this case, created a question of fact, and the matter should have been submitted to the jury as such. The trial judge held just the contrary, and charged the jury as matter of law that " if the plaintiff stipulated that he was to be paid the other $2,500 when the title was closed, the title never having closed, that part of the commission was not earned and the verdict should be for the defendant." To this an exception was taken. This was error. As above stated, the use of the word " when " may create a condition precedent having the significance of " if," or it may merely refer to the time of payment, the payment itself not being dependent upon the happening of any event, such as the closing of title. The question as to the intention of the parties in using the word " when " is for the jury. The fact is that the contract says to be paid " on the closing of title," but I take it that the words " on " and " when " are here synonymous.

The Appellate Division, therefore, was justified in reversing the judgment for the defendant for this error in the charge, although a new trial should have been ordered instead of judgment for the plaintiffs directed.

This being so, the case should now go back for a new trial, and this matter of the settlement by the defendants submitted to a jury, under proper instructions, even though the point was not clearly raised in the trial record before us. The judgment should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND and O'BRIEN, JJ., concur with KELLOGG, J.; CRANE, J., dissents in opinion in which HUBBS, J., concurs; LEHMAN, J., dissents on the ground that the seller released the buyer from his obligation.

Judgment accordingly.