Roy G. FROLING, Plaintiff and Respondent,

v.

John A. ODEGARD, Defendant and
Appellant.

No. 7410.

Supreme Court of North Dakota.

Nov. 18, 1954.

Odin J. Strandness, Fargo, for defendant and appellant.

Henry J. Stiening, Moorhead, Minn., for plaintiff and respondent.

BURKE, Judge.

This is an action upon a real estate broker's contract. Plaintiff is the assignee of the broker's rights under the contract. The case was tried without a jury in the County Court of Cass County, and a judgment in favor of the plaintiff was rendered and entered. Defendant has appealed from the judgment and has demanded a trial de novo in this court.

Defendant was engaged in the business of building dwelling houses for sale. He and plaintiff's assignor, M. J. O'Connor, a real estate broker, met fortuitously in a restaurant in Fargo about the 15th of December, 1952. A conversation ensued between the parties concerning the sale of houses which the defendant was building. As to the particular house involved in this action, defendant testified that he told O'Connor he could sell the house and that his commission would be all that he obtained above a net price of $11,000. O'Connor testified that defendant told him he could have a commission of $500 if he sold the house for a gross price of $11,500.

A day or two thereafter O'Connor brought a Mr. Oye to the house. The defendant was present at the time and although he had known Mr. Oye before, this was the first time he had met him as a prospective purchaser. Oye had known that the house was for sale prior to this visit. His father had worked upon the construction of the house and had recommended that he purchase it and on a previous occasion he had inspected it.

A day or two later O'Connor arranged to meet Mr. and Mrs. Oye at the house. Together they viewed the house and discussed terms of sale. Oye testified that he finally told O'Connor that he couldn't pay $11,500 for the house because he didn't have enough money for a down payment at that price, and asked O'Connor if he couldn't get the price reduced. He said that O'Connor told him that the owner would not reduce the price. Mr. O'Connor testified that he did not remember this conversation, but did not deny that it took place.

A day or two before Christmas O'Connor left the city for a vacation over the Christmas Holidays. On December 29, defendant sold the house to Oye for the sum of $10,-800.

The only question in the case is whether under these facts the judgment of the court can be sustained. We are agreed that it cannot. The contract sued upon is not the usual broker's contract under which the broker receives a fixed percentage of the gross price obtained. Accepting as true the broker's testimony as to its terms, the contract was much more limited in character. Its sole content was that the broker was to receive a $500 commission if he procured a buyer who would pay a price of $11,500 for a new house then in process of completion by the owner. Under the broker's testimony there was no agreement whatever as to what the commission should be in the event that he found a purchaser who would pay less than $11,500. The contract was to pay the broker a stated fixed sum as his commission if he obtained the stipulated price for the house, and nothing more.

If we accept as sufficient, the proof that the broker procured Mr. Oye as a prospective buyer of the house, the evidence is nevertheless uncontradicted that Mr. Oye notified the broker that he would not and could not pay $11,500 for the house and that the broker refused to negotiate with the owner for the purpose of securing a reduction in price. The broker's refusal to negotiate is evidence that he fully understood the limited nature of his contract.

In Grangaard v. Betzina, 33 N.D. 267, at page 270, 156 N.W. 1035, at page 1035, this court said:

"It is well settled, indeed, in North Dakota, that when a man agrees to pay a commission in consideration of the receipt of a certain price, he means what he says, and nothing more; and the fact that one has agreed to pay $1 per acre if the broker sells his land for $50 an acre does not make him liable for such commission and under such contract if he afterwards sells the land for $48 an acre, and even to a person presented by the broker, provided that the person has positively refused to purchase at $50 and the seller has in no way prevented the broker from perfecting the sale of such land at the said sum."

In support of this statement the court cited; Anderson v. Johnson, 16 N.D. 174, 112 N.W. 139; Fulton v. Cretian, 17 N.D. 335, 117 N.W. 344; Terry v. Bartlett, 153 Wis. 208, 140 N.W. 1133; Good v. Erker, 170 Mo.App. 681, 153 S.W. 556; Gage v. Billing, 12 Cal.App. 688, 108 P. 664; Montgomery v. Slater, 87 Kan. 848, 126 P. 1085; Steere & Ballah v. Gingery, 21 S.D. 183, 110 N.W. 774; Paulson v. Reeds, 33 N.D. 141, 156 N.W. 1031. The principle of law, above laid down, applies with full force to the facts in the instant case.

Plaintiff contends that the rule, which the opinion in Grangaard v. Betzina, supra, announces as established in this state, was modified in the later case of Red River Valley Land Co. v. Hutchinson, 41 N.D. 193, 170 N.W. 317, wherein a commission was allowed to a real estate broker. In the opinion in that case the court distinguished it from the case of Grangaard v. Betzina, saying 41 N.D. at page 199, 170 N.W. at page 319:

"The case at bar is likewise clearly distinguishable from the case of Grangaard v. Betzina, supra, in that the parties in the latter case were dealing upon the basis of a certain price per acre, whereas in the instant case throughout

the negotiations it appears that the parties regarded rather the aggregate consideration of the sale, *the defendant never stating the minimum net aggregate upon which he would be willing to pay the stipulated commission."*

In the instant case the owner did state the minimum net aggregate upon which he would be willing to pay the stipulated commission. Thus the facts which distinguish the Grangaard case from the Red River Valley Land Co. case also distinguish this case from the Red River Valley Land Co. case, and that case therefore has no application here.

The judgment of the county court is reversed.

MORRIS, C. J., and P. O. SATHRE and G. GRIMSON, JJ., concur.

JOHNSON, J., did not participate.