LESLIE BLAU, PLAINTIFF-RESPONDENT, v. MORRIS FRIEDMAN AND BETTY FRIEDMAN, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued September 4, 1957—Decided October 16, 1957.

Before Judges CLAPP, JAYNE and HUGHES.

*Mr. Hymen B. Mintz* argued the cause for appellants.

*Mr. Aaron Lasser* argued the cause for respondent (*Messrs. Lasser & Lasser,* attorneys; *Mr. H. Lee Sarokin,* on the brief).

The opinion of the court was delivered by

JAYNE, J. A. D.   Factual dissimilarities often demand legal distinctions, and in the process of ironing them out great circumspection must be employed lest a new wrinkle is put in for every one smoothed out.   In the present case we are informed that on May 28, 1956 the defendants contractually engaged in writing the services of the plaintiff as a realtor to solicit and procure for them a purchaser of the premises designated as Nos. 26 and 28 Elmwood Avenue in the Town of Irvington, Essex County, New Jersey.   In literal confirmation of their agreement the defendants subscribed their respective signatures to the following written memorandum:

"In accordance with our conversation, this will authorize you to represent *us* as our Exclusive Agent for the Sale of the land and building *which we own* at 26 & 28 Elmwood Ave. Irvington.

This Agreement shall be effective May 28 1956 and will operate until June 28 1956.

We agree that the sale price for the premises will be 113,700. In the event that you succeed in selling this property *for us* for this or any other price that we may agree to accept, we will pay you a commission equal to 5% of the total purchase price *if, as and when title to the property actually passes to the purchaser*, whether that purchaser is produced by you, any other broker, or by us direct during the term of this Agreement.

> Very truly yours,
> MORRIS FRIEDMAN
> BETTY FRIEDMAN"

We ourselves have italicized those portions of the verbiage of the memorandum which snapshot preliminarily the particularly significant characteristics of the employment agreement.

The acknowledged eventualities were that the plaintiff in pursuance of his authorization actually obtained for the defendants a satisfactory purchaser ready, able and willing to acquire title to the premises for the specified price. The conveyance of the property, however, failed of consummation for reasons somewhat singular.

By means of the prosecution of this action, the plaintiff has a judgment against the defendants for his brokerage commission in the sum of $5,685, the legal and factual propriety of which we are requested by the defendants to investigate.

In rationalizing the problem, let us begin at the beginning with the realization that in the absence of some qualifying or oppugnant expression in the contract of employment, a broker who is duly engaged earns his commission when he procures for the owner a purchaser ready, able, and willing to comply with the terms specified in the authority thus conferred, or with other or different terms which, however, are satisfactory to the owner. *Marschalk v. Weber*, 11 *N. J. Super*. 16, 21 (*App. Div.* 1950), certification denied 6 *N. J.* 569 (1951) ; *Alnor Construction Co. v. Herchet*, 10 *N. J.* 246, 253 (1952) ; *Todiss v. Garruto*, 34 *N. J. Super*. 333 (*App. Div.* 1955), certification denied 18 *N. J.* 549 (1955) ; *Beckmann, Inc., v. (Zinke's) Rainbow's End, Inc.*,

40 *N. J. Super.* 193 (*App. Div.* 1956), certification denied 22 *N. J.* 219 (1956), in all of which citations of the earlier decisions appear.

In association with the foregoing general rule is the established principle that a broker and his employer may by a special agreement contract to fix definitely or to postpone the time of payment of the commission or, indeed, conditionally make the payment of the commission entirely dependent on a stated contingency such as "if, as and when title to the property actually passes to the purchaser." *Hinds v. Henry,* 36 *N. J. L.* 328 (*Sup. Ct.* 1873); *Morse v. Conley,* 83 *N. J. L.* 416 (*Sup. Ct.* 1912); *Leschziner v. Bauman,* 83 *N. J. L.* 743 (*E. & A.* 1912); *Simon v. Garber,* 3 *N. J. Misc.* 150 (*Sup. Ct.* 1925); *Lippincott v. Content,* 123 *N. J. L.* 277 (*E. & A.* 1939); *Real Estate Exchange v. Lieberman,* 8 *N. J. Super.* 99 (*App. Div.* 1950); *Richard v. Falleti,* 13 *N. J. Super.* 534 (*App. Div.* 1951); *Alexander Summer Co. v. Weil,* 16 *N. J. Super.* 94 (*App. Div.* 1951); *Todiss v. Garruto, supra; Beckmann, Inc., v. (Zinke's) Rainbow's End, Inc., supra.*

We are disposed at this point to express the conclusion that under the terms of the brokerage agreement now before us, the accrual of the commission was mutually intended to be made contingent upon the actual consummation of the conveyance. Compare, *Lehrhoff v. Schwartsky,* 2 *N. J. Misc.* 353 (*Sup. Ct.* 1924); *Taylor & Rose, Inc., v. Buonincontri,* 101 *N. J. L.* 278 (*Sup. Ct.* 1925); *Dermody v. New Jersey Realties,* 101 *N. J. L.* 334 (*E. & A.* 1925); *Muhlenbrock v. Stonehell Realty Co.,* 104 *N. J. L.* 176 (*E. & A.* 1927); *J. R. Tucker, Inc., v. Mahaffey,* 6 *N. J. Misc.* 17 (*Sup. Ct.* 1928); *Kram v. Losito,* 105 *N. J. L.* 588 (*E. & A.* 1929), illustrative of clauses in the brokerage agreement interpreted merely as designating the time for the payment of the commission.

It is, however, a comprehensive axiom that one cannot ordinarily utilize advantageously his own fault as an exit of escape from the performance of his contractual obligations. *Keifhaber v. Yannelli,* 9 *N. J. Super.* 139, 142

(*App. Div.* 1950); 3 *Williston on Contracts* 1952, § 677; *Restatement, Contracts,* § 295, *p.* 438. Therefore, there is a principle of law supported by an abundance of judicial authority in numerous jurisdictions that the condition upon which the payment of the broker's commission is contractually made to depend is rendered ineffectual and inoperative where his principal, the vendor, has indulged in some affirmative wrongful act which in effect has prevented the consummation of the sale. *Rauchwanger v. Katzin,* 82 *N. J. L.* 339 (*Sup. Ct.* 1912); *Lehrhoff v. Schwartsky, supra; Keifhaber v. Yannelli, supra; Marschalk v. Weber, supra; Beckmann, Inc., v. (Zinke's) Rainbow's End., Inc., supra. Vide, Amies v. Wesnofske,* 255 *N. Y.* 156, 174 *N. E.* 436, 438, 73 *A. L. R.* 918 (*Ct. App.* 1931); *cf. Stern v. Gepo Realty Corporation,* 289 *N. Y.* 274, 45 *N. E.* 2d 440, 441 (*Ct. App.* 1942).

This principle is universally recognized. The discordancy and divergency of opinion discoverable in the decisions are not attributable to any incertitude concerning the principle, but to the contrastive and differential conceptions of its applicability to the circumstances of the given case, and to the particular terms of the brokerage contract.

In the present case, as you will recognize, we have a known and express misrepresentation by the vendors to the broker concerning the very cause that in fact prevented the accomplishment of the conveyance. The defendants definitely represented *in the memorandum* to the innocent and otherwise uninformed broker that they were the *owners* of the property. This representation indubitably transported the rational implication that they were the sole owners of the premises and were themselves clad with the ability to transmit to the desired purchaser a marketable title thereto. *Magrill v. Langan,* 43 *N. Y. S.* 2d 210 (*Sup. Ct.* 1943); *Cash v. Diamond,* 208 *Misc.* 712, 144 *N. Y. S.* 2d 627 (*N. Y. C. Mun. Ct.* 1955).

This unqualified declaration of the defendants tinted by its productive implications was inexact, uncandid, and pragmatically deceptive. The undeniable fact is that the mother of the defendant Morris Friedman had a beneficial

one-half interest or estate in the property. She declined to join the defendants in the effectuation of the negotiated sale; hence it collapsed.

In *Kruse v. Ferber*, 91 *N. J. L.* 470 (*Sup. Ct.* 1918), the broker's employer proved only to be "a tenant by curtesy initiate"; in *Taub v. Shampanier*, 95 *N. J. L.* 349 (*Sup. Ct.* 1921), the employer was a "tenant by the entirety"; in *J. I. Kislak, Inc., v. Judge*, 102 *N. J. L.* 506 (*Sup. Ct.* 1926), also a "tenant by the entirety"; in *Blitzer v. Burns*, 15 *N. J. Misc.* 736 (*Dist. Ct.* 1937), the employer was a life tenant. In each instance the broker achieved a recovery.

We are not aware that it is in the least doubted that the plaintiff faithfully, fully, and completely performed the service sought of him by the defendants.

Noticeably, however, the memorandum in the present case evidencing the plaintiff's employment stipulated that his commission would be payable to him "if, as and when title to the property actually passes to the purchaser." Initially, it would seem that this quoted provision is so interrelated that it cannot be severed from the accompanying representations therein; to wit, "* * * this will authorize you to represent *us* as our Exclusive Agent for the Sale of the land and building *which we own* * * *," and "in the event that you succeed in selling this property *for us* * * *."

Was it contemplated and intended by the parties that the contingency provision, although ordinarily applicable, should be operative, and effectually applicable, where, contrary to the express representation, the defendants themselves knowingly lacked a full ownership of the premises and omitted to divulge that fact to the plaintiff?

The New York Court of Appeals, in *Colvin v. Post Mortgage & Land Co.*, 225 *N. Y.* 510, 122 *N. E.* 454, 455 (1919), stated:

"The broker may, if he chooses, agree that, if the sale falls through because of the seller's fault, he shall be entitled to nothing. Commonly, however, such is not the meaning of the parties, and an agreement should not be so construed unless such a result is clearly intended."

. Here, the defendants engaged the plaintiff to represent "us" and to procure a purchaser "for us." The plaintiff did so *for them* in complete fulfillment of his engagement and to their satisfaction. A distinguishing feature of this case which we desire to emphasize is that the misrepresentation in the brokerage agreement was the precise obstacle. that prevented the consummation of the sale.

Fundamentally, therefore, we recognize significantly the pertinent principles of law and the demonstrable facts which we have already announced. But it is advocated that the admittedly false representations of the defendants, although affirmatively expressed to the plaintiff and of vital consequence, were not motivated by any willful, malicious, or fraudulent intent.

In the endeavor to reduce the act of the defendants from vice to listless inadvertence, it was disclosed at the trial that by virtue of a written declaration executed by the defendant Morris Friedman on May 29, 1947, he acknowledged that he held in the capacity of a trustee the title to an undivided one-half estate in the premises for his mother, Sarah R. Friedman. The instrument, also executed by the mother, bestowed upon the trustee power to sell or mortgage the property.

However, by another instrument in writing, the mother on January 18, 1952 expressly revoked the power of sale theretofore conferred upon her son by the trust indenture and on January 22, 1952 caused both the unrecorded trust agreement and the instrument revoking the power of sale to be entered in the records of the Essex County Register's office. The defendants assert that they were unaware of the revocation of the power of sale at the time of the plaintiff's employment on May 28, 1956. We do not pass upon the valid efficacy of the intended revocation by the sole *cestui que trustent*. The fact is that the concealed equitable estate of the mother in the property was the sole causal circumstance that influenced the parties to abandon the bargain.

At best, we are asked to envision a situation in a scenic environment in which the vendors actually deceived their

broker but did not mean to do so. In such an exigency of affairs, will the law permit the defendants to utilize the contingency clause as a shield to insulate them *ex aequo et bono* from rewarding the plaintiff for his acknowledged services? Upon mature consideration, our answer is to the contrary.

It becomes excusable to iterate that this is not a case in which the failure of the consummation of the conveyance was attributable to unknown defects in the vendors' title, or to the arbitrary refusal of the purchaser to perform his obligations under a contract of sale, in which event the vendors stood passive and neutral, nor one in which there was cooperating wrongdoing of both the vendors and the purchaser, but obviously a cause of action implicating solely the complete performance by the broker and the frustrating conduct of his clients.

The material consequence of the concealment of the mother's estate is conspicuous. Had the truth been made known to the plaintiff, he would in reasonable probability have also sought the mother's authorization. It was the deceptive conduct of the defendants that inspired the services of the plaintiff and thwarted the conclusion of the negotiated opportunity to sell the property.

Had the defendants misrepresented their lack of ownership in a contract of sale delivered to the purchaser, however carelessly heedless of the truth, would the law exonerate them from liability to the deceived buyer? How much less should the law be disposed to liberate them in such a circumstance from responsibility to compensate the broker who in ignorance of, and reliance upon, the deception has completely performed the services for the rendition of which he was employed. 3 *Corbin on Contracts, p.* 957.

It is realized that in reading the decisions in *Apfelbaum, Inc., v. Topf,* 104 *N. J. L.* 343 (*E. & A.* 1928); *Lippincott v. Content,* 123 *N. J. L.* 277 (*E. & A.* 1939); *Womersley v. Nicosia,* 135 *N. J. L.* 452 (*E. & A.* 1947); *Clark v. Jelsma,* 40 *N. J. Super.* 58 (*App. Div.* 1955), some ambivalence of authority is seemingly discernible, but omitting an explana-

tion of inordinate detail, we choose only to state that those decisions are manifestly distinguishable in factual and legal background from the circumstances of the case before us.

It is resolved that the judgment under review should be affirmed.